**UNITED STATES**

**v.**

**Senior Airman Pamela G. WHITE, FR 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 United States Air Force.**

**ACM 25982.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 31 March 1987.

Decided 27 Aug. 1987.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Charles L. Wille.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Captain Jeffrey H. Curtis.

Before HODGSON, C.J., and FORAY and HOLTE, Appellate Military Judges.

**DECISION**

HODGSON, Chief Judge:

At trial the appellant moved to suppress a urinalysis report that was positive for the presence of benzoylecognine, a metabolite of cocaine, maintaining that her agreement to give a urine sample was not voluntary, but acquiescence to the color of authority displayed by her squadron section commander. *See* Mil.R.Evid. 314(e). After the

trial judge refused to suppress the test results together with a derivative confession, a conditional guilty plea was entered to a single allegation of drug abuse. *See* R.C.M. 910(a)(2); *United States v. Forbes,* 19 M.J. 953 (A.F.C.M.R.1985). The correctness of the trial judge's ruling is the focus of this appeal.

■ Whether a consent to search is voluntary is a fact question to be determined by the surrounding circumstances for which the case law can provide only general guidance. Each case must be decided on the particulars of the situation in issue. *United States v. Wallace,* 11 M.J. 445 (C.M.A.1981).

With this principle in mind we must examine the transcript at hand. In the early afternoon of 23 December 1986, Captain Drussell Jones, the appellant's squadron section commander, was told by the Office of Special Investigations (OSI) that they had "reliable information" that the appellant had used marijuana and cocaine while on leave. Jones was asked to obtain the appellant's consent for a voluntary urinalysis and if this was not forthcoming to initiate a "command-directed examination." [1] He asked the appellant and her supervisor, Staff Sergeant Maria Larson, to see him later that afternoon. Sergeant Larson was present during Jones' discussion with the appellant. During the meeting Jones told the appellant that "someone ... was trying to defame her character and she had an opportunity to clear her name," and asked her to consent to a urinalysis.

The appellant testified she was "shocked" by the suggestion and pressed her commander for additional information as to the source of the allegation. Jones told her he did not know the name of the individual, but it was someone who saw her "using drugs while you were on leave." He also told her the OSI was the origin of the information. The appellant indicated she was engaged in a custody battle over her daughter with her husband and "suspected [he] was spreading lies on her." When the appellant asked what would hap-

pen if she refused to consent to the urinalysis, Jones told her he "would command-direct the urinalysis." The appellant continued to press for more information about the person making the drug abuse allegation, but after being convinced that her commander had told her all he knew about the matter, she agreed to provide a urine sample.

Since Jones did not have the proper form for her to sign, he left the office to find one. While he was gone, the appellant asked Larson if she knew the difference between a "command-directed urinalysis and the kind being requested." Larson said she did not, and asked the appellant if the test "was going to come out negative," and was told that it would. Larson then indicated if "[the test] was going to come out good, just go ahead and get it done, and if it was going to come out positive not to submit to it." Jones returned with the written form, gave it to the appellant and told her to read it. According to Jones she looked at it carefully, and began to ask the same questions she had earlier posed, i.e., who said she used drugs?, when, etc. She then gave written permission for a urinalysis. The interview lasted about an hour.

Both the appellant and Larson testified that the discussion with Captain Jones was conducted in a "relaxed" atmosphere and that he was "very nice" and apparently "concerned" about the situation. He was not "threatening" or "overbearing." The appellant acknowledged that her commander told her to read the consent form "carefully" and did not "rush" her to sign it.

On appeal the appellant argues that her consent was not voluntary because she felt she had "no choice" since the commander would simply "direct a test" if she refused to provide a urine sample. At trial she stated that Jones, in reply to her question of what would happen if she refused to urinate, stated, "We can call the SPs over and we can take you into the emergency room and catheterize you." Captain Jones had no recollection of such a statement and Sergeant Larson, who was present during

1. The results obtained from command-directed testing cannot be used against a servicemember in any disciplinary action under the Uniform Code of Military Justice, nor may they be used

in characterizing a discharge in a separation proceeding. Air Force Regulation 30–2, *Social Actions Program,* para. 5–8 (18 April 1986).

the discussion was not questioned by either counsel on this point nor was it raised during the argument on the motion to suppress. The appellant further indicated she did not recall asking Larson the difference between a command-directed and a consensual urinalysis. She did remember, however, her discussion as to whether the test "would come back positive or negative." Her testimony at trial can be inferred to mean that she knew a positive result from the urinalysis was likely, as she stated, "I ... didn't want to disclose my guilt ..., and I didn't want to hang myself ... right in front of her, so [I told Larson] I was ... innocent." The appellant asserted that if she had known the limits of how the results of a command-directed urinalysis could be used, she would not have agreed to provide a urine sample.

 Appellate defense counsel argue that our recent decision in *United States v. Pellman*, 24 M.J. 672 (A.F.C.M.R.1987), mandates setting aside appellant's conviction. We disagree because the two cases can be factually distinguished. We read *Pellman* as holding that the person requesting a consensual search may not actively mislead an accused into believing that a basis exists to lawfully obtain the requested evidence. There it appears that the appellant was told probable cause was available to justify a search authorization if the requested consent was not given. We found that the record did not support this conclusion. In the case under review the appellant was told if she did not provide a urine sample, it could be required under existing regulations. This was not misleading, and was correct. *See* Air Force Regulation 30–2, *Social Actions Program*, para. 5–8 (18 April 1986). Implicit in the appellant's brief on this issue is the argument that her consent to search was not voluntary because she was not informed that the test results of a "command-directed" inspection could not be used in criminal proceedings. We decline to make this a requirement in deciding the voluntariness of a consent to search.

In *United States v. Rushing*, 17 U.S.C. M.A. 298, 38 C.M.R. 96 (1967), the Court of Military Appeals held that it was not coercion or threat for a police officer to indicate to an accused that if he refuses to consent to a search, the officer will apply for a warrant. They concluded that such a declaration was nothing more than a statement of an intention to follow a legal course of action. This rationale applies to the case before us. Captain Jones told the appellant that if she chose not to consent he would pursue a different course of action that was lawfully permitted. *See also United States v. Nicholson*, 1 M.J. 616 (A.C.M.R.1975). Jones' statement was not coercion and the appellant was not misled as to what he could lawfully do.

 As appellate defense counsel rightly observe it is the "totality of all the circumstances" that determines if a consent to search is voluntary rather than acquiescence to lawful authority. *United States v. Spann*, 24 M.J. 508 (A.F.C.M.R.1987). Here the request for consent was prefaced by a full and open discussion of why it was requested. The requester, Captain Jones, told the appellant everything he knew as to why it was sought. The written consent itself states clearly what the signer is giving up. Both the appellant and a third party to the interview agreed that the consent was requested in a relaxed, nonthreatening and unhurried atmosphere. Finally, it is apparent that the appellant knew that if she consented to a urinalysis incriminating evidence was likely to be discovered. Knowing this, she still agreed to give a specimen after being advised not to if there was a chance it would be positive. The trial judge saw and heard the witnesses on the motion to suppress. The record of trial supports his conclusion that the consent was free and voluntary from coercion. Having concluded the consent to search was proper, the subsequent confession was not tainted and is also admissible. The findings of guilty and the sentence are

AFFIRMED.

Senior Judge FORAY concurs.

Judge HOLTE absent.