**UNITED STATES, Appellee,**

v.

**Pamela G. WHITE, Senior Airman, U.S. Air Force, Appellant.**

No. 58,850.

ACM 25982.

U.S. Court of Military Appeals.

Nov. 7, 1988.

For Appellant: *Captain Lynne H. Wetzell* (argued); *Colonel Leo L. Sergi* (on brief).

For Appellee: *Captain Jeffrey H. Curtis* (argued); *Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni* and *Major Scott W. Stucky, USAFR* (on brief); *Lieutenant Colonel Morris A. Tanner, Jr.*

*Opinion of the Court*

COX, Judge:

In accordance with her conditional pleas of guilty,[1] appellant was convicted of a single specification of wrongfully using cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a.[2] We granted review of this issue:

> WHETHER THE MILITARY JUDGE ERRED BY FAILING TO SUPPRESS, AS PRODUCTS OF AN ILLEGAL SEARCH, A POSITIVE URINALYSIS RESULT AND A DERIVATIVE CONFESSION.

We hold that the military judge did err, and we reverse.

Appellant was a 29–year-old senior airman.[3] Appellant's commander received information from an agent of the Air Force Office of Special Investigations that he had been informed by a "reliable" source that appellant had been using drugs during a recent period of leave. The agent advised the commander to ask appellant to consent to a urinalysis. In the event she refused, he should "command direct" a urinalysis. Accordingly, the commander summoned appellant, along with her NCO supervisor.

The commander informed appellant that "someone ... was trying to defame her character" and offered her "an opportunity to clear her name." Appellant became quite "upset" and tried to find out the source of this information, thinking that it might have been her estranged husband and might have related to a custody battle over their young child. The commander truthfully admitted that he didn't know the source. Appellant asked what would happen if she did not consent; the commander replied that he would then "command direct" it; that he would "order her to pro-

---

1. *See* R.C.M. 910(a)(2), Manual for Courts-Martial, United States, 1984.

2. Her sentence to a bad-conduct discharge, confinement for 5 months, and reduction to E–1 was approved by the convening authority and

affirmed by the Court of Military Review. 24 M.J. 923 (1987).

3. At the time of the offense, appellant held the rank of sergeant and had served on active duty in excess of 5 years.

vide the sample." He did not explain the ramifications of a command-directed or ordered urinalysis.

Eventually, seeking a consent form, the commander left the office while appellant thought it over. While he was gone, appellant and her supervisor talked it over. The supervisor remembered appellant asking her what the difference was between a command-directed urinalysis and the one being requested of her. The supervisor admitted to appellant that she did not know. The supervisor advised appellant "that if this was going to come out good, just go ahead and get it done, and if it was going to come out positive not to submit to it." Appellant remembered the advice to submit if she was clean, but did not remember asking the difference between a consensual and a command-directed urinalysis.

After the commander returned, he and appellant talked about it a bit more. According to appellant, she asked:

> [W]hat are they going to do [if she refused to supply a sample even if ordered], hold me down and get one? And he said well, you know, if it goes that far we can do that; we can call SPs [Security Police] over and we can take you into the emergency room and catheterize you. And I—at that time I just go, God I can't believe they can do that to me, you know.

Ultimately, she signed the consent form and submitted to the urinalysis. The results were positive for cocaine. After being confronted with the results, she confessed to using cocaine during her recent leave.

Unbeknownst to appellant, the difference between a command-directed urinalysis and a consent urinalysis was the whole ball game.[4] If the sample was obtained through consent, the results of the laboratory analysis were admissible in her court-martial.[5] If it was obtained through "command direction," not only were the results inadmissible "in any disciplinary ac-

tion under the Uniform Code of Military Justice," they also could not "be used in characterizing a discharge in a separation proceeding." *United States v. White*, 24 M.J. 923, 924 n. 1 (A.F.C.M.R. 1987), *citing* para. 5–8, Air Force Regulation 30–2, *Social Actions Program* (April 18, 1986).

Indeed, it appears that the only way this urinalysis or its results could be admissible in a court-martial against appellant was through her valid consent to giving the sample. Mil.R.Evid. 312(d), Manual for Courts-Martial, United States, 1984, provides:

> Nonconsensual extraction of body fluids, including blood and urine, may be made from the body of an individual *pursuant to a search warrant or a search authorization under Mil.R.Evid. 315* [probable cause searches]. Nonconsensual extraction of body fluids may be made without such warrant or authorization, notwithstanding Mil.R.Evid. 315(g)[involving certain exigencies not applicable here], *only when there is clear indication that evidence of crime will be found and that there is reason to believe that the delay that would result if a warrant or authorization were sought could result in the destruction of the evidence.* Involuntary extraction of body fluids under this rule must be done in a reasonable fashion by a person with appropriate medical qualifications.

(Emphasis added.)

It is not claimed, and it could not be on this record, that there was probable cause to order appellant to provide a urine sample. The question then is what is good consent, and did it happen here?

As the Supreme Court has made clear, "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina,*

---

4. This was the first time this commander had ever sought a consent urinalysis, and the record is silent as to whether he understood the consequences.

5. Indeed, the consent form appellant signed contained the express warning that the results of the urinalysis might be used against her in a court-martial.

391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968) (footnote omitted). *See also United States v. Middleton*, 10 M.J. 123 (C.M.A.1981). The Court has rejected the contention "that proof of knowledge of the right to refuse consent is a necessary prerequisite to demonstrating a 'voluntary' consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 232–33, 93 S.Ct. 2041, 2050, 36 L.Ed.2d 854 (1973). Rather, "[i]n determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances ...." *Id.* at 226, 93 S.Ct. at 2047. *See also United States v. Stoecker*, 17 M.J. 158 (C.M.A.1984).

However,

the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting "consent" would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed.

412 U.S. at 228, 93 S.Ct. at 2048. Thus, a search cannot "be justified as lawful on the basis of consent when that 'consent' has been given only after the official conducting the search has asserted that he possesses a warrant." *Bumper v. North Carolina, supra* at 548, 93 S.Ct. at 1791 (footnote omitted). The prosecutor's

burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.

When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coer-

cion. Where there is coercion there cannot be consent.

*Id.* at 548–50, 93 S.Ct. at 1792 (footnotes omitted). *See also United States v. Ezell*, 6 M.J. 307, 323 (C.M.A.1979).

What separates this case from the usual, civilian Fourth Amendment case is Article 90(2), UCMJ, 10 U.S.C. § 890(2), which provides that it is a crime to "willfully disobey[ ] a lawful command of ... [one's] superior commissioned officer." *See United States v. Austin*, 27 M.J. 227 (C.M.A.1988). The commander's ability to order the urinalysis is the functional equivalent of the police officer's having possession of a valid search warrant. In such circumstance, it is not the consent that legitimizes the search, but the warrant. *See Bumper v. North Carolina, supra.*

Of course there was nothing unlawful here in the commander's threat/promise to order appellant to provide the sample. Had he done so, she either had to comply or risk prosecution for disobedience of the order. *See United States v. Lee*, 25 M.J. 457, 465–70 (C.M.A.1988) (Cox, J., concurring in part and dissenting in part). The point is, when the servicemember is given no option, what results is mere acquiescence, not consent. *Bumper v. North Carolina, supra.* If the seizure is to be justified, it must be done on another basis.

In our view, the commander had at least two legitimate courses of action. First, he could have simply requested appellant's consent without indicating his ace in the hole. Then the judge might have scrutinized the circumstances to determine if her will was overborne, *cf. United States v. Gibson*, 3 USCMA 746, 752, 14 CMR 164, 170 (1954); or the commander could have meaningfully explained to her the consequences of his alternatives. Then it could not be claimed that her choice was secured by threat of the order.

In our view, the circumstances herein provide no basis for concluding that the prosecution sustained its "burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina, supra* 391 U.S. at 548, 93 S.Ct. at 1792 (footnote omitted); *see* Mil.R.Evid.

314(e)(5) ("[c]onsent must be shown by clear and convincing evidence"). Because the Government relied only on consent, we have no occasion to consider applicability of any other theories of admissibility.

The decision of the United States Air Force Court of Military Review is reversed.

The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge EVERETT and Judge SULLIVAN concur.