858

**UNITED STATES**

v.

**Airman Basic Joseph E. COOK, FR 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, United States Air Force.**

**ACM 26977.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 11 April 1988.

Decided 6 Jan. 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Paul M. Dankovich.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Major Kathryn I. Taylor and Captain Joseph V. Treanor, III.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

LEWIS, Senior Judge:

Despite pleas of not guilty the appellant was found guilty of a charge and specification alleging wrongful use of cocaine in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. He was sentenced to a bad conduct discharge, confinement for ten months and forfeiture of all pay and allowances.

A sample of the appellant's urine, obtained after he executed a consent form, was tested and determined to be positive for the cocaine metabolite. Following consideration of evidence presented by both parties on a defense motion to suppress the urinalysis information, the military judge concluded that the appellant's consent to provide urine had been freely and voluntarily given. Mil.R.Evid. 314(e)(4). This case presents a factual situation very similar to that which the Court of Military Appeals analyzed in *United States v. White*, 27 M.J. 264 (C.M.A.1988). *White* was issued after the trial of this case, and the military judge did not have the benefit of the Court's reasoning therein when he made his ruling. While he conducted a commendably thorough evidentiary hearing and announced essential findings and conclusions in conformance with the evidence presented, the admission of the urinalysis information constituted error in light of this recent guidance.

The appellant and his friend, Airman Musgrave, attended a rock concert in San Antonio. Before and during the first part of the concert, the appellant consumed a variety of alcoholic beverages. He and Musgrave engaged in disorderly behavior and were apprehended by San Antonio police. They were turned over to a military police detachment following the determination of their active duty status. They were transported to Kelly Air Force Base where they were met by their first sergeant who had been telephonically notified. The first sergeant drove them to Wilford Hall Medical Center, at the neighboring Lackland Air Force Base, after having told them that he had been instructed to ask that they consent to urinalyses, or words to that effect. When they arrived at Wilford Hall, the

first sergeant repeated generally what he had told them previously. One of the two asked whether they were required to consent. The first sergeant answered that they were not required to consent. When he was asked by one of the two the consequence of declining to consent the first sergeant replied that a command direction to provide urine would follow. One of the two asked what the difference was between providing urine consensually as opposed to obeying a command direction. The first sergeant answered that the distinction related to the "amount of action" the commander could take.[1]

Following this conversation the first sergeant ascertained that the appellant was willing to consent. The first sergeant provided the appellant an Air Force Form 1364, Consent for Search and Seizure. The appellant signed it after having been given an opportunity to read it and ask questions. The first sergeant testified that he verbally summarized the information in the form on a "thought by thought" basis. This form provides, in pertinent part:

> I understand that, if I do consent to a search, anything found in the search can be used against me in a criminal trial or in any other disciplinary or administrative procedure. I also understand that, if I do not consent, a search cannot be made without a warrant or other authorization recognized in law.

While the first sergeant's testimony did not specifically reflect that he covered this particular language in his "thought by thought" summary, he stated that the appellant acknowledged his understanding of the information on the form. The appellant executed the form and provided a sample of his urine.[2]

The appellant's version of events was quite different from that of the first sergeant. According to his testimony, his recollection of the circumstances surrounding his signature of the consent form was very poor owing to his intoxicated condition at the time. However, he testified further, his overall sense of the advice he had received from the first sergeant was that he was being asked to consent to a command-directed urinalysis. He assumed from this advice that the commander had directed that he provide a sample of urine for testing. The first sergeant, on the other hand, described the appellant's demeanor as similar to that of one who had just been awakened from a deep sleep. In his opinion the appellant was fully capable of comprehending what he was told and reacting in an intelligent and appropriate manner.

We will accept the military judge's findings of fact. We also accept his conclusion that the appellant was not sufficiently impaired by alcohol to render him incapable of knowingly and intelligently consenting to provide urine. However, we cannot accept his further conclusion that the consent was voluntary. The appellant received inadequate advice on the consequences of providing urine in response to a command direction. Evidence obtained from a command-directed examination, with exceptions not relevant here, cannot be used against a member in a court-martial. Air Force Regulation 30–2, *Social Actions Program*, para. 5–8b (19 April 1986) (Change 1, 19 August 1988).[3] Failure to advise an accused of the critical difference between a consent and a command-directed urinalysis, once the subject is raised, converts what purports to be consent to mere acquiescence. *United States v. White*, 27 M.J. at 266, *citing Bumper v. North Carolina*,

---

1. The first sergeant could not recall whether the appellant or Airman Musgrave had posed the questions. However, he clearly recalled that the conversation was held in the presence of both airmen.

2. The appellant had consented to urinalysis as the result of a drunk and disorderly incident in the dormitory approximately three months previously. The circumstances pertaining to this consent are not sufficiently developed to provide any basis for evaluating the extent of the

appellant's knowledge concerning his alternatives and the consequences of one as opposed to another.

3. While the 19 August 1988 change to the directive reflects a substantial revision in certain aspects of command-directed examination guidance, the basic prohibition against the use of evidence obtained thereby in courts-martial remains intact.

391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

Here, the first sergeant's testimony established that the appellant was given only a partial explanation of the difference which the *White* opinion describes as being critical. He was told that the amount of action that a commander might take differed depending upon the means by which the urine was obtained. As was the accused in *White*, the appellant was provided a consent form that advised him that the evidence obtained with his consent might be used against him in a court-martial. *See* 27 M.J. at 265, n. 5. While the appellant was not left to fend for himself so completely as was the accused in *White*, the first sergeant failed to explain in a meaningful manner the results of his alternatives. 27 M.J. at 266. We will not infer that the appellant understood the alternatives fully and clearly in view of that which was communicated to him.[4]

Based on the record before us, and in light of the guidance of *United States v. White*, the urinalysis evidence should not have been admitted. This evidence constituted the prosecution's sole proof of appellant's wrongful use of cocaine. Accordingly, the findings of guilty and sentence are set aside. We do not discount the possibility, however, that the government may be able to present an alternate theory of admissibility. A rehearing is authorized. If a rehearing is not considered appropriate, the Charge and Specification should be dismissed.

Judge BLOMMERS and Senior Judge KASTL concur.

---

**4.** The military judge concluded that the first sergeant's explanation had been "informative" to the appellant. It did not, however, convey the full scope of information the *White* opinion discusses as being meaningful to an individual in the appellant's position. *See* Judge Cox's discussion, 27 M.J. at 265.