UNITED STATES

v.

**Sergeant Billy A. PEOPLES, FR 234–08–0708, United States Air Force.**

**ACM 27364.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 18 Oct. 1988.
Decided 11 April 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major Frank J. Spinner.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Terry M. Petrie.

Before FORAY, MICHALSKI and MURDOCK, Appellate Military Judges.

### DECISION

MURDOCK, Judge:

The appellant was convicted of one specification of use of cocaine and one specification of dishonorably failing to maintain sufficient funds in his checking account. He was sentenced to a bad conduct discharge, 10 months confinement, and reduction to airman basic. Now he asserts that the military judge improperly applied the inevitable discovery rule when he refused to suppress evidence of the appellant's urinalysis. We agree it was error to admit the results of the urinalysis, but for a different reason.

The appellant reported late to work one morning, and his demeanor suggested drug use to his supervisors. They reported their suspicions to the squadron commander. The squadron commander called the legal office and requested advice since this was the first "drug case" he had handled as a commander. The judge advocate he spoke with at the legal office told him there were two ways to proceed. He advised the commander to try first to obtain consent to a urinalysis because "it's an easier way to go"; or, if the appellant would not consent, then the urine should be taken involuntarily. Although the subject was thoroughly explored by the trial court, the record is not clear about whether the judge advocate told the commander that he should pursue a search authorization or merely direct the urinalysis if there was no consent.

■ The trial judge found, based primarily on the appellant's drug intoxication during the interview with the commander, that the consent had been involuntary and was therefore ineffective. The judge also found that because there was probable cause to direct a urinalysis of the appellant, and because the squadron commander was authorized to grant search authority, the commander would have directed a urinalysis of the appellant in the form of a probable cause search authorization.

This is too great a leap for us to take based on the evidence before us. It is not clear to us that the commander would, inevitably, have issued a search authorization for the appellant's urinalysis. We find it at least as possible that the commander would simply have directed the test.

We continue to be concerned about the application of the inevitable discovery doctrine. *See United States v. Haye*, 25 M.J. 849 (A.F.C.M.R.1988) (inevitable discovery should be applied carefully and narrowly). In *United States v. Kozak*, 12 M.J. 389 (C.M.A.1982), the Court announced the scope of the inevitable discovery rule in the military:

> [T]he prosecution must, by a preponderance of the evidence, establish to the satisfaction of the military judge that when the illegality occurred, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence and that the evidence would inevitably have been discovered in a lawful manner had not the illegality occurred.

12 M.J. at 394.

■ There is a more direct reason for holding that the military judge unwittingly erred in this case. When the present case was tried, *United States v. White*, 24 M.J. 923 (A.F.C.M.R.1987) had not yet been de-

688

cided by the United States Court of Military Appeals. Based on the law known at the time of trial, the military judge was correct in attempting to apply a totality of the circumstances analysis to the request for a consent urinalysis. However, on 7 November 1988, the Court of Military Appeals reversed the Air Force *White* decision and redefined the rules for consent urinalysis. *United States v. White*, 27 M.J. 264 (C.M.A.1988).

The appellant's case appears to be squarely on point with *White*. In both cases inexperienced commanders dealt with their first consent urinalysis situation. Both commanders announced that if consent were not given, they would direct a urinalysis. Also, neither commander explained the consequences to the servicemembers, in terms of possible prosecutions, of choosing to consent.

When the commander called the appellant into his office and told him he wanted him to consent to a urinalysis, the appellant asked for the commander's advice. The commander said he could not advise him, stating it was "totally your decision to consent or not to consent." After a lengthy pause, the appellant said, "I guess you're going to get one anyway." The commander responded, "Yes, irregardless of which way you decide, yes." Shortly after that the appellant consented. As he signed the consent form he muttered, "I guess it's going to go easier on me."

The appellant hoped for leniency as a result of his decision, but as Judge Cox stated in *White*, "[T]he difference between a command-directed urinalysis and a consent urinalysis was the whole ball game." 27 M.J. at 265. Results from a urinalysis taken with the subject's consent or as a result of a properly authorized search based on probable cause, may be used as evidence in a court-martial, while results from a command-directed urinalysis may not. Air Force Regulation 30–2, *Social Actions Program*, figure 5–1 (18 April 86).

In the present case probable cause may well have existed, but the appellant's commander could not have issued a search authority for the urinalysis because he was too much a part of the investigation to be considered a neutral and detached magistrate. *United States v. Ezell*, 6 M.J. 307 (C.M.A.1979).

We hold that the consent to urinalysis was involuntary and the urinalysis results were inadmissible. They should have been suppressed. Since the urinalysis was the only evidence introduced to show the appellant's guilt of Charge I and its specification, they are set aside and dismissed.

 Now we must reassess the sentence. The additional charge is left untouched by this opinion. It states that the appellant dishonorably failed to maintain sufficient funds in his checking account to honor about $1300 worth of checks (seven checks were involved). We find only so much of the sentence as includes a bad conduct discharge, confinement for six months, and reduction to airman basic to be appropriate. Article 66(c), UCMJ, 10 U.S.C. § 866(c). The findings of guilty and the sentence, both as modified, are

AFFIRMED.

Senior Judge FORAY and Judge MICHALSKI concur.