**UNITED STATES, Appellant,**

v.

**Cedric McCLAIN, 436–31–8357, Aviation Structural Mechanic (Hydraulics) Second Class (E–5), U.S. Navy, Appellee.**

**NMCM No. 894166 M.**

U.S. Navy–Marine Corps Court of Military Review.

2 Feb. 1990.

Reconsideration Denied 13 March 1990.

Maj. Rose Marie Favors, USMC, Appellate Government Counsel.

Lt. Jeffrey S. Horwitz, JAGC, USNR, Appellate Defense Counsel.

Lt. Debra R. Sandifer, JAGC, USNR, Appellate Defense Counsel.

FREYER, Judge:

This case comes before us on an appeal by the Government pursuant to Article 62 (10 U.S.C. § 862) and Rule for Courts–Martial (R.C.M.) 908, Manual for Courts–Martial, United States, 1984, from a ruling by the military judge suppressing for use as evidence the results of a urinalysis conducted on a specimen obtained from the appellee by the command urinalysis coordi-nator of the Naval Air Station, Corpus Christi, Texas, on 2 August 1989.

At the conclusion of a joint hearing on corresponding motions to suppress made by the appellee and one Dixon, the military judge made ample and well-supported essential findings on the record, from which we extract the following synopsis: Late in the evening on 1 August 1989, the appellee and three other sailors were arrested in a parked automobile by the Corpus Christi police. They were detained overnight in the Nueces County jail under substandard conditions and turned over to naval authorities the following afternoon. Whatever food was provided during their detention was preempted by other prisoners in the mass cell, and the water was deemed undrinkable. The respondent had little sleep overnight because adequate bedding was not provided, and because the cell door was repeatedly opened and closed to admit additional prisoners. When the appellee and his associates were returned to the Naval Air Station in custody, they were subjected to a check-in procedure into the disciplinary barracks which, it was made clear to them, would include a urinalysis. In advance of the check-in procedure, the commanding officer of the Naval Air Station was briefed on the arrest. He expressed doubt that the appellee and the other arrestees, being petty officers, would have been using illicit drugs, because his petty officers had come up negative in previous urinalyses, and he opined that they had more likely been involved in drug-dealing. In light of the commanding officer's doubts regarding probable cause to conduct a command-authorized urinalysis, it was decided to try first to obtain the appellee's consent to a voluntary urinalysis. The commanding officer knew that he was empowered to direct a urinalysis but that the results of a command-directed urinalysis were usable only for "administrative purposes." The commanding officer never, in fact, ordered nor authorized a urinalysis in the case of the appellee. While it is clear that the commanding officer expected his staff judge advocate to return with a request to order a compulsory urinalysis in the event

that the appellee refused to give consent, the commanding officer stopped short of declaring that he would have ordered a compulsory urinalysis, and the military judge stopped short of finding that the commanding officer would inevitably have ordered a compulsory urinalysis in that event. In effect, the military judge found to the contrary by stating: "The government has presented no other basis upon which the results of these urinalysis tests could be admitted." Since the appellee did manifest consent by signing the consent form and providing a urine specimen, no further application was made to the commanding officer.

■ The military judge concluded that the Government had failed to meet its burden of showing that the appellee's consent was voluntary, and with that conclusion we agree. *See United States v. Simmons,* 29 M.J. 70 (C.M.A.1989); *United States v. White,* 27 M.J. 264 (C.M.A.1988). In response to the Government's argument that probable cause existed to conduct a command-authorized urinalysis pursuant to Mil.R.Evid. 315, Manual for Courts–Martial, United States, 1984, and that *Simmons,* therefore, validated the urinalysis in this case, the military judge ruled as follows:

The government urges the court to believe that the the [sic] case of the U.S. v. Simmons, 29 M.J. 70, stands for the proposition that a proper search authorization is not required where the accused involuntary [sic] consents to a search, but where there is probable cause for which a search authorization could have been obtained.

I agree that in the cases before this court that [sic] probable cause existed to properly order an involuntary urinalysis, even though CAPT Reynolds [Commanding Officer, Naval Air Station, Corpus Christi] did not think so at the time, and never issued such an authorization.

I also find that the consent was involuntarily given. I disagree, however, with the government's assertion that the Court of Military Appeals, through Simmons, intended to abrogate or lessen the

requirement under MRE 315 that a search authorization, based on probable cause, be issued by a duly empowered commander in order to make the results of an involuntary search admissible at trial. The government has presented no other basis upon which the results of these urinalysis tests could be admitted.

[2, 3] In *Simmons,* the Court of Military Appeals summarized the facts as follows: "While they were seated in an automobile in a heavy drug-trafficking area of Washington, D.C., appellant and a companion were arrested by District of Columbia police. Cocaine and drug paraphernalia were found in the automobile." In light of the striking similarity between the facts of *Simmons* and those of the instant case, we agree with the military judge that the commanding officer was presented with sufficient information to establish probable cause for ordering a urinalysis. Also, for reasons set forth below, we agree with the military judge's opinion that, as a matter of constitutional law and under the Military Rules of Evidence, an involuntary consent does not engender an exception to the warrant (authorization) requirement applicable to a probable cause urinalysis. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). We believe, however, that the military judge understandably failed to appreciate the change of direction in Fourth Amendment analysis begun in *White* and continued in *Simmons.*

■ Our analysis of the post-*Simmons* state of the law begins with these two sentences at page 266 of *United States v. White:*

The commander's ability to order the urinalysis is the functional equivalent of the police officer's having possession of a valid search warrant. In such circumstances, it is not the consent that legitimizes the search, but the warrant. *See Bumper v. North Carolina, supra.*

The equation of mere ability on the part of the commander to order a urinalysis with actual possession of an existing valid search warrant by a police officer is noteworthy, and the Court of Military Appeals' citation of *Bumper v. North Carolina* is

particularly interesting in this regard. In that case, a police officer, in the course of requesting a property owner's consent to make a search, informed her that he had a search warrant. Neither at trial nor on appeal did the prosecution seek to rely on the possible validity of the warrant in the event that the consent was held invalid. As a result, the validity of the warrant was not litigated at trial.

In its opinion, the Supreme Court, at pages 548–549, stated:

The issue thus presented is whether a search can be justified as lawful on the basis of consent when that "consent" has been given only after the official conducting the search has asserted that he possesses a warrant. We hold that there can be no consent under such circumstances.

When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, *or fails to show that there was, in fact, any warrant at all.*

(Emphasis supplied; footnotes omitted.)

That is precisely the situation with which the military judge in the instant case deemed himself confronted: an invalid consent and a failure by the United States to show that there was, in fact, any warrant (authorization) at all. Indeed, the uncontroverted evidence showed that there was not, in fact, any authorization at all. Or was there?

In *Simmons,* the court states:

Here, however, unlike in *White,* there was adequate probable cause upon which the command *could have ordered* the urinalysis against appellant's wishes. Such an order, supported by probable cause, is the military's functional equivalent of a search warrant.

(Emphasis supplied.)

■ The *Simmons* equation of a search order that could have been *but was not* given with a valid *and existing* search warrant corresponds to the *White* equation of a commander's *mere ability* to order a urinalysis with a police officer's *actual possession* of a valid search warrant. Rule 41(a), Federal Rules of Criminal Procedure, authorizes a federal magistrate or judge of a state court of record to issue a search warrant upon request of a federal law enforcement officer or an attorney for the Government; as we know, however, the mere receipt of information constituting probable cause by a federal magistrate or state judge, who does not, for whatever reason, thereupon issue a search warrant, does not automatically result in an existing search warrant by operation of law, nor does it justify conducting a search without a warrant, *McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). In orthodox Fourth Amendment analysis, a search order not given would be the counterpart of a warrant not obtained, and a search pursuant to such a nonexistent order would be as *per se* unreasonable as a search without a warrant where no lawful exception to the warrant requirement had been established. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, *rehearing denied,* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971). As we view the metaphysical underpinnings of *White* and *Simmons,* however, they are that Article 90, Uniform Code of Military Justice (10 U.S.C. § 890), unlike Rule 41(a), Federal Rules of Criminal Procedure, constitutes a blank, general, inchoate search authorization in the possession of every military commander at all times, upon which, whenever probable cause comes into being, an invisible hand writes, filling in the blanks so as to define its terms coextensively with the probable cause, whereupon it ripens into a lawful search authorization requiring neither physical substantiation nor verbal articulation; in fact, neither the commander nor the individual physically conducting the search need be

aware that any of this has even happened. In this way the warrant (authorization) requirement of *Bumper, Coolidge,* and Mil. R.Evid. 315 is said to be satisfied even though no probable cause authorization has, in fact, been issued by the commander. Perhaps this analysis was foreshadowed by footnote 22 in *United States v. Middleton,* 10 M.J. 123, 135 (C.M.A.1981), although we should prefer to think that *Middleton* was limited to situations where the commander was on the scene and his authorization, although unarticulated, could, nevertheless, be sensed to be real by the parties concerned. Otherwise, it appears to us that the authorization requirement, as distinct from the probable cause requirement, would be effectively eliminated from military law.

 Another aspect of *Simmons* that is unclear from either the Court of Military Review opinion at 26 M.J. 666 (AFCMR 1988) or the Court of Military Appeals opinion in that case is whether or not the information alleged to constitute probable cause actually reached Simmons' commander. The general rule, of course, is that probable cause does not exist in the air, and that matters not communicated nor otherwise known to the commander cannot be considered in support of a probable cause determination. Mil.R.Evid. 315(f)(2). Whether or not that rule applies to *White/Simmons* -type authorizations remains to be seen. That issue was not present in *White,* and fortunately we need not address it at this time, because in the instant case the information necessary to constitute probable cause was communicated or otherwise known to the commanding officer.

While the search authorization in *Simmons* is a legal fiction, the decision in the case is a reality, which is binding on lower military courts and must, therefore, be followed. Contrary to the reply brief of the appellate defense counsel, we conclude that the commanding officer, while he expressed doubts regarding probable cause, did not go so far as to make an adverse probable cause determination but merely reserved decision pending the outcome of the quest for consent. Moreover, it would seem consistent with the underlying ratio-

nale that even a negative probable cause determination by a commander, if erroneous, could not stay the invisible hand from producing an effective *White/Simmons* -type authorization, but that is another issue which we need not decide today. Yet another issue raised by *Simmons,* which would undoubtedly be of great interest to certain elements in the field and would also be pertinent to the application of the inevitable discovery doctrine, is whether or not evidence of a urinalysis explicitly ordered as a command-directed urinalysis may be admitted if it is determined, *ex post facto,* that the commander who ordered it, in fact, had probable cause to order a command-authorized urinalysis. *Cf.* the pre-*Simmons* case of *United States v. Peoples,* 28 M.J. 686 (AFCMR 1989). Once the premises of *White* and *Simmons* are accepted, the law in this area must await clarification by the Court of Military Appeals; but, at least as it pertains to this case, we read *Simmons* as requiring that the defense motion to suppress the results of the urinalysis be denied.

The decision of the military judge is reversed, and the case is returned to him for further proceedings consistent with this opinion.

Chief Judge BYRNE and Judge STRICKLAND concur.