**UNITED STATES, Appellee,**

v.

**Cedric McCLAIN, Aviation Structural Mechanic (Hydraulics) Second Class, U.S. Navy, Appellant.**

**Misc. Dkt. No. 90–10.**
**NMCM No. 894166 M.**

U.S. Court of Military Appeals.

Argued June 12, 1990.

Decided Sept. 25, 1990.

For Appellant: *Lieutenant Debra R. Sandifer, JAGC, USNR* (argued); *Lieutenant Commander P. McNeill Jones, JAGC, USN and Lieutenant Peter J. Wiernicki, JAGC, USNR.*

For Appellee: *Major Rose Marie Favors, USMC* (argued); *Commander Thomas W. Osborne, JAGC, USN.*

*Opinion of the Court*

COX, Judge:

The accused was being tried by a special court-martial in November 1989 at the Naval Air Station, Corpus Christi, Texas, on charges of possessing cocaine and marijua-na on August 1, 1989, and using cocaine and marijuana on August 2, 1989, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. After arraignment, defense counsel sought to suppress the results of a urinalysis that was taken on August 2 and was the basis for the use charges. Although the accused signed a consent form allowing the urinalysis, the military judge found that, in fact, he had not consented. The judge also ruled that the urinalysis results were inadmissible because the commanding officer had never ordered it pursuant to an inspection, and he had not determined that there was probable cause and executed an authorization for the urinalysis. The military judge therefore ordered the evidence suppressed. Pursuant to Article 62, UCMJ, 10 USC § 862, the Government appealed the ruling.

The Court of Military Review reversed the military judge's decision. 30 MJ 615 (1990). While the court agreed that accused had not voluntarily consented to the urinalysis, *citing United States v. White,* 27 MJ 264 (CMA 1988), 30 MJ at 617, it ruled that, under this Court's recent decision in *United States v. Simmons,* 29 MJ 70 (CMA 1989), the urinalysis was admissible because the commanding officer could have ordered the urinalysis anyway since he had probable cause. 30 MJ at 618. Consequently, the accused has petitioned for review of the decision of the Court of Military Review, which we granted on this issue:

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED IN REVERSING THE MILITARY JUDGE'S RULING TO SUPPRESS THE RESULTS OF THE ACCUSED'S URINALYSIS.

On the night of August 1, the Corpus Christi police found drugs while searching the car in which the accused was a passenger. The vehicle was owned by the driver who was a fellow servicemember. The accused was arrested for possessing cocaine and marijuana. He was held overnight in a

detention cell before he was returned to his command.

When the accused's commanding officer, Captain Reynolds, was informed that the accused and the other two occupants of the vehicle had been arrested for drug possession, he was surprised and sought the advice of his staff judge advocate as to what course of action to pursue. Before speaking with the staff judge advocate, Captain Reynolds told the urinalysis coordinator, through the chain of command, to first try to obtain a urine sample by consent. If this was not successful, the coordinator was to report back to Captain Reynolds, through the chain of command. A decision then would be made as to whether probable cause existed to order that a sample be taken. Since consent was ostensibly obtained, there was no request for an authorization to take a sample. Based upon the evidence as to how the accused's consent was obtained, the military judge held that such evidence was not clear and convincing, so the accused's consent was not voluntary. He ruled:

> I find the Government has not met its burden. The two accused had been in custody for approximately 20 hours, during which time they had been incarcerated, fed little or nothing, provided undrinkable water, deprived of sleep, essentially directed to go to urinalysis, given a consent form without sufficient explanation or discussion, all the while standing at parade rest.
>
> There is no doubt both accuseds are intelligent, articulate individuals, who, under normal circumstances, could read and under[stand] the consent form. These were not, however, normal circumstances.
>
> \* \* \* \* \* \*
>
> I find, accordingly, that the Government has failed to meet its burden; that the consent was involuntary....

The military judge also found, however, that "probable cause existed" to obtain a urine sample, although Captain Reynolds had never made this determination.

Captain Reynolds' testimony was such that he understood that the accused's urine sample could only be used at a court-martial if the sample were given voluntarily or if he ordered that the sample be taken pursuant to an authorization based upon probable cause. There was no testimony that the sample was sought pursuant to an inspection under Mil.R.Evid. 313(b), Manual for Courts–Martial, United States, 1984. Captain Reynolds expressed doubt as to whether he had probable cause to execute a warrant. Specifically, he did not even know the circumstances of the arrest; he only knew that the accused was suspected, with the others, of drug possession.

Trial counsel argued that under *United States v. Simmons, supra,* because probable cause existed, there was no need to obtain a warrant or authorization even though the accused had not consented to the search. The judge disagreed, finding that *Simmons* did not stand for the proposition

> that the Court of Military Appeals ... intended to abrogate or lessen the requirement under MRE 315 that a search *authorization,* based upon probable cause, be issued by a duly empowered commander in order to make the results of an involuntary search admissible at trial.

(Emphasis added.)

Now we are called upon to re-visit *United States v. Simmons,* 29 MJ 70 (CMA 1989), and *United States v. White,* 27 MJ 264 (CMA 1988), to determine under what circumstances a servicemember's consent to a urinalysis will support admissibility of the results in a court-martial. The law is clear and unambiguous:

(1) Searches may be conducted of any person or property with lawful consent.

> \* \* \* \* \* \*

(4) To be valid, consent must be given *voluntarily.* Voluntariness is a question to be determined from all the circumstances.... Mere submission to the color of authority of personnel performing law enforcement

duties or acquiescence in an announced or indicated purpose to search is not a voluntary consent.

Mil.R.Evid. 314(e) (emphasis added); *see Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *United States v. White, supra.*

Searches of military members for the presence of unlawful drugs in a sample of the member's urine may take several forms. In addition to "military inspections," *see United States v. Bickel,* 30 MJ 277 (CMA 1990), searches of a servicemember's urine for unlawful drugs can be:

(1) consensual;

(2) "command-directed";

(3) pursuant to an "authorization to search"; or

(4) pursuant to a "search warrant" (*see* Mil.R.Evid. 315(b)(2)).

■ A distinction must be made between "command-directed" searches, which are administrative in nature, and probable-cause searches. Military regulations prohibit the results of "command-directed" searches from being used in trials by courts-martial. *United States v. Daskam,* 31 MJ 77(8) (CMA 1990). Probable-cause searches result from a commander or military judge issuing an "authorization to search," Mil.R.Evid. 315(b)(1), or from an appropriate civilian authority issuing a "search warrant." U.S. Const., amend. IV. Additionally, "exigencies" may obviate the need for a "search authorization" or "search warrant" under limited, unique circumstances. *See* Mil.R.Evid. 315(g).

■ If a military member is asked to *consent* to a urinalysis by superior authority, we look at the facts and circumstances surrounding the consent to determine if in fact it is voluntary, and that determination depends largely on how and under what circumstances consent is obtained. *Schneckloth v. Bustamonte,* 412 U.S. 218,

93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The following chart illustrates several common scenarios:

CONSENT TO SEARCH

| CIRCUMSTANCES OF CONSENT | RESULT |
|---|---|
| 1. Consent obtained without threat of "command-directed" urinalysis or search warrant under Mil.R.Evid. 315(e). | Admissible. |
| 2. Consent obtained with threat of "command-directed" urinalysis. <u>United States v. White, supra.</u> | Not admissible.* |
| 3. Consent obtained with threat of potential search warrant or search authorization. <u>United States v. Salvador,</u> 740 F.2d 752 (9th Cir.1984), cert. denied, 469 U.S. 1196 [105 S.Ct. 978, 83 L.Ed.2d 980] (1985). | Possibly admissible, depends on circumstances. |
| 4. Consent obtained with threat of actual search warrant or search authorization. <u>Bumper v. North Carolina,</u> 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). | Not admissible by virtue of consent; admissible by virtue of warrant. |

■ To the extent that our opinion in *United States v. Simmons,* 29 MJ 70 (CMA 1989), suggests any analysis different from what we have here, it is expressly overruled. An official seeking consent from a servicemember may explain that he will attempt to obtain from an appropriate commander or military judge a search authorization based upon probable cause if consent is not forthcoming, but it must be done in an appropriate manner so as to make the resulting consent truly voluntary.

■ Turning to the instant case, the military judge clearly found that consent was not voluntary. Under such circumstances, it does not matter that there was probable cause to order the urinalysis. There is no "invisible hand" writing out a search authorization. The military judge stated it most succinctly when he said, "[A] search authorization, based on probable cause, [must] be issued by a duly empowered com-

* *White* made clear that consent can be voluntary if the consequences of the "command-directed" administrative search, vis-a-vis a voluntary, consensual search, are explained to the servicemember. 27 MJ at 266. The record must be clear that the consent is not "[m]ere submission to the color of authority." Mil.R.Evid. 314(e)(4), Manual for Courts–Martial, United States, 1984.

mander in order to make the results of an involuntary search admissible at trial."

We are mindful that the United States Navy–Marine Corps Court of Military Review reversed the ruling of the military judge in this case based upon its reading of *United States v. White* and *United States v. Simmons,* both *supra.* In *White,* we said:

> The commander's ability to order the urinalysis is the functional equivalent of the police officer's having possession of a valid search warrant. In such circumstances, it is not the consent that legitimizes the search, but the warrant. *See Bumper v. North Carolina, supra.*

27 MJ at 266.

██ It should be noted that the accused in *White* was dealing directly with the commander empowered to authorize a search. In military practice there need not be a *written* warrant. Thus, a commander's obtaining consent by threat of a search is analogous to the officer being in possession of a search warrant. Under those circumstances, the evidence comes in through the legitimacy of the warrant or search authorization, not through the accused's consent. *Bumper v. North Carolina, supra.*

██ *United States v. Simmons, supra,* admittedly created some confusion applying *White.* We retreat from any suggestion in *Simmons* that "involuntary consent" can be ignored if there is probable cause to obtain a search authorization or search warrant.

The military judge correctly applied the law to the facts of this case. "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina, supra* at 548, 88 S.Ct. at 1792 (footnote omitted). The fact that probable cause *may* exist does not eliminate the burden on the Government to prove voluntary consent.

The decision of the United States Navy–Marine Corps Court of Military Review setting aside the suppression order is reversed. The record of trial is returned to the Judge Advocate General of the Navy for submission to the military judge for such proceedings as may be appropriate.

Chief Judge EVERETT concurs.

SULLIVAN, Judge (concurring in the result):

I did not join my Brothers' resolution of *United States v. Simmons,* 29 MJ 70 (CMA 1990), and I do not join their recantation of the same today. In any event, unlike *United States v. Simmons, supra* at 71, the opinion below in this case precludes a finding that appellant would have been inevitably required to submit to a urinalysis as a returning civilian arrestee. *See generally United States v. Bickel,* 30 MJ 277 (CMA 1990); *cf. United States v. Daskam,* 31 MJ 77 (CMA 1990). Accordingly, I join my Brothers in upholding the judge's suppression ruling.