**UNITED STATES**

v.

**Senior Airman James J. HOLLIS, FR 191–50–9010, United States Air Force.**

**ACM 28693.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 22 May 1990.

Decided 20 Nov. 1990.

Appellate Counsel for the Appellant: Lieutenant Colonel Jeffrey R. Owens, Ma-jor Ronald G. Morgan and Captain Darla G. Orndorff.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr.; Major Brenda J. Hollis; Major Paul H. Blackwell, Jr. and Captain Morris D. Davis.

Before MURDOCK, KASTL and MILLS, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

Asked if he would "consent" to give two different urine samples, Senior Airman Hollis did so on 13 and 14 March 1990. He "popped positive" both times. At Hollis's court-martial for use of cocaine, the military judge ruled that Hollis had merely acquiesced to military authority on the first date. The judge then suppressed the 13 March urinalysis results.

Our focus turns to the legality of the 14 March testing. Did the military judge correctly permit the prosecution to use the results of this second urinalysis? In the light of recent Court of Military Appeals authority, we hold that the military judge erred. We dismiss that specification.

### Factual Setting

On 13 March, Hollis knew he was suspected of drug abuse. He asked his first sergeant the difference between a command-directed urinalysis and a consent urinalysis. The first sergeant responded that one had more impact but did not explain the consequences in any detail. Hollis then entered his commander's office. He signed an Air Force Form 1364, Consent for Search and Seizure. It authorized taking of a urine specimen. Afterwards, Hollis asked his commander what would have happened had he refused to consent. Significantly, *she told Hollis she would have ordered him to submit to a command-directed urinalysis anyway.*

On 14 March, Hollis was off-duty. He was called in by his commander for missing a prior appointment. When he arrived, the commander believed him either drunk or "high." She read him his rights under

Article 31, UCMJ, 10 U.S.C. § 831, and requested him to consent to another urinalysis. At trial, he testified that he gave consent this second time because:

> A: I really didn't have much of a response due to the fact that *the day before there was no choice in the matter.* So I thought I had the same rights.
>
> Q: What did you feel that they would have done had you not consented?
>
> A: Gave me a command directed and I would have went up [sic] anyway.
>
> Q: Why did you believe that?
>
> A: *Due to the day before the thing* [sic].

(Emphasis added).

In a thoughtful analysis, the military judge suppressed the 13 March urinalysis results pursuant to *United States v. White,* 27 M.J. 264 (C.M.A.1988). However, he sought to distinguish the situation on 14 March. On that second occasion, he explained, the commander never intimated that she would order a urinalysis if Hollis failed to consent; so Hollis was not under a mistaken impression regarding his legal options.

### Analysis

■ On 2 October 1990, we requested further development of the original assignment of errors in light of *United States v. McClain,* 31 M.J. 130 (C.M.A.1990). We have received useful briefs from both sides.

In *McClain,* the Navy–Marine Court of Military Review considered a similar situation. The accused had not consented, said our sister Court, but the urinalysis was admissible because the commander could have ordered a urine test anyway since he had valid probable cause. *United States v. McClain,* 30 M.J. 615 (N.M.C.M.R.1990). The Court of Military Appeals reversed, reasoning that the Navy–Marine Court erred when it found no consent but never-

theless affirmed, premised on a sort of prototype or inchoate probable cause: "The fact that probable cause *may* exist does not eliminate the burden on the Government to prove voluntary consent." *McClain,* 31 M.J. at 134 (emphasis in original). We understand our senior Court to say this in *McClain:* A commander cannot produce after-the-fact "hip-pocket" probable cause (however solid) to rescue urinalysis results after the Government fails to prove voluntary consent.[1]

Based on *McClain,* we hold that the military judge erred in failing to suppress the results of the second urinalysis of 14 March. On Day 1, Hollis questioned the differences between a command-directed urinalysis and one to which he might consent; he received an obviously inadequate explanation. *He then was told he would have been ordered to submit to a command-directed test in any event.*

On Day 2, he was once again asked if he would consent to give a urine specimen. It is blazingly clear that on Day 2, Hollis "thought the jig was up" and that yesterday's operating rules still applied. He was facing precisely the same dilemma he'd experienced 24 hours earlier; he was in front of the same commander in the same office setting. The same Hobson's choice faced him: "Consent or we'll turn to our command-directed mode. Either way, *you have no legal option.*"[2]

We conclude that the misadvice of Day 1 would be seen by a rational service member to carry over as "business as usual" on Day 2. Precedent mandates that we dismiss this offense, which is Specification 2 of the Charge. *See McClain,* 31 M.J. at 133.

### Remaining Offense

■ There remains before us Hollis' uncontested guilty plea to an earlier use of cocaine in January–February 1990. Such

---

1. The Navy–Marine Court approach rejected by the Court of Military Appeals had suggested the analogy of an "invisible hand" writing out a search authorization. *McClain,* 30 M.J. at 618.

2. We believe this situation distinguishable from *United States v. Steward,* 31 M.J. 259 (C.M.A. 1990), where the Court eliminated (or at least

severely limited) the concept of presumptive taint in regard to warnings under Article 31, UCMJ. Here is a different situation, with the appellant logically and rationally assuming that yesterday's rule ("you have no choice") was also today's rule. *See United States v. Schake,* 30 M.J. 314, 320 (C.M.A.1990).

drug offenses are reviewed routinely by this Court; we are experienced in appreciating what is an appropriate sentence. *United States v. Sales,* 22 M.J. 305 (C.M.A. 1986); *see also United States v. Peoples,* 29 M.J. 426 (C.M.A.1990). Specification 2 of the Charge is dismissed. Reassessing on the basis of the remaining offense, we approve a sentence of a bad conduct discharge, confinement for 5 months, forfeiture of $500.00 per month for 5 months, and reduction to airman basic.

The findings of guilty and the sentence, both as modified, are correct in law and fact and, upon the basis of the entire record, are

AFFIRMED.

Senior Judge MURDOCK and Judge MILLS concur.