UNITED STATES

v.

**Staff Sergeant Rickey RACHEL, FR 258–98–6817, United States Air Force.**

ACM 28369 (f rev).

U.S. Air Force Court of Military Review.

Sentence Adjudged 22 Jan. 1990.

Decided 18 Jan. 1991.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major Ronald G. Morgan.

Appellate Counsel for the United States: Colonel Robert E. Giovagnoni; Major Brenda J. Hollis; Major Paul H. Blackwell, Jr. and Captain Morris D. Davis.

Before MURDOCK, KASTL and MILLS, Appellate Military Judges.

OPINION OF THE COURT UPON
FURTHER REVIEW

MURDOCK, Senior Judge:

This case presents an opportunity for us to comment on proper coding of a consent

urinalysis. This case was originally submitted to us on its merits. We affirmed in a short form opinion on 23 April 1990. Based on the appellant's assertions pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), the Court of Military Appeals set aside our prior decision and returned the record for further review. 31 M.J. 488.

In his brief at the Court of Military Appeals, the appellant asserted three errors under *Grostefon*. They were: a) his urinalysis had been command directed and therefore could not form a proper basis for prosecution, b) he had been denied effective assistance of counsel, and c) the sentence was unduly harsh. Although we have received no brief from the appellant on remand, we assume he would want to raise the same issues before us. Apparently proceeding on the same assumption, appellate government counsel provided us with affidavits from the trial defense counsel and his paralegal specialist.

Our review of these documents, and the record of trial, convinces us that there is no merit in any of the appellant's assertions. However, to avoid confusion about the basis of our decision, we will discuss his assertions briefly.

■ The accused pleaded guilty, without exceptions or conditions, to one specification of wrongful use of cocaine. There was neither a stipulation of fact nor a pretrial agreement. At trial, neither he nor his counsel attempted, in any way, to challenge the urinalysis. He now complains that the urinalysis was command directed, and not based on his consent. If this were true, the urinalysis could not form the basis of a court-martial prosecution. Air Force Regulation 30–2, *Social Actions Program*, para. 5–8b (19 August 1988).

■ He asserts that his urinalysis was command directed because the Air Force Form 1890, Urinalysis Custody and Report Record (Apr 86), which was used to record his urine test shows a "CD" code for his test. The affidavits provided by the government state that the form is coded "CD" because there is no code for a consent test. Our inspection of the form confirms that there is no consent code. Lacking a specific code for consent, "CD" was probably the best alternative. Although the compulsion of a command directed test is absent in a consent test, consent tests like the appellant's are command directed in the sense that a command figure requested the appellant to consent to a test. The appellant did not just decide, on his own, to report to the testing facility and request a urinalysis. A better solution would probably be to add a block to the form for voluntary/consent urine tests.

Because the form is obviously not designed to provide an unequivocal answer to the question being raised by the appellant, we must look to the other circumstances of the urinalysis to form our opinion. First, we note that this case is not like the cases envisioned in *United States v. Pollard*, 27 M.J. 376 (C.M.A.1989), where the Court of Military Appeals stated that "the military judge may exclude drug-test results if he finds there has been a substantial violation of regulations intended to assure reliability of the testing procedures." In the appellant's case the forms and test procedures used appeared to the court, with the help of an expert witness, to be in proper order. We concur. What the appellant is challenging here is whether the forms reflect the actual category of urinalysis to which he was subjected.

■ We are convinced the test was properly characterized as a consent test. The affidavits provided by the government discuss interviews with all who were present at a meeting when the appellant's officer-in-charge, Lieutenant Mora, asked the appellant whether he would consent to a urinalysis. Lt Mora, Master Sergeant Rieth, the superintendent of Accounting and Finance, and Lt Mora's secretary, Carol Hubert, all are reported as having heard about the same thing at the meeting: That is, the appellant's supervisors were worried about his increasing financial difficulties. They had decided to find out what was causing them and had tentatively decided it was either gambling, women, or drugs. Although the unit commander, Major Heath, and Lt Mora and MSgt Rieth all felt drugs were the least probable possibility, they

decided to eliminate each possibility in turn. For this reason, Lt Mora was to ask the appellant if he would consent to a urinalysis. The appellant is reported to have said that he "didn't have any problem" with giving a urine sample, and that he "had nothing to hide." The affidavits are silent as to what would happen if the appellant did not consent. We find that his consent was freely given and that this is not a coerced consent case such as was seen in *United States v. White,* 27 M.J. 264 (C.M. A.1988).

Having interviewed these people and concluded that the appellant had consented to the urinalysis, the appellant's trial defense counsel decided not to contest the voluntariness of the test. In view of our finding that the test was voluntary, we cannot say that the appellant received ineffective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ During sentencing, the government introduced a copy of a special court-martial order showing that the appellant had been convicted in 1981 of two specifications of transfer of cocaine, and two specifications of transfer of marijuana. The government also introduced evidence of Article 15, UCMJ, punishment which was imposed in September 1989 for bad checks. With this background in mind, we find it completely appropriate for this staff sergeant to have received the sentence he did: bad conduct discharge, 12 months confinement, forfeiture of $224.00 per month for 12 months, and reduction to airman basic.

Having now completed our second review of this record, including the special concerns raised by the appellant pursuant to *Grostefon,* we once again approve the findings of guilty and the sentence under Article 66(c), UCMJ, 10 U.S.C. § 866(c). The findings of guilty and the sentence are

AFFIRMED.

Senior Judge KASTL and Judge MILLS concur.