UNITED STATES, Appellee

v.

Philip AVERY, Jr., Airman First Class
U.S. Air Force, Appellant.

No. 93–0955.
CMR No. 29552.

U.S. Court of Military Appeals.

Submitted Oct. 25, 1993.

Decided Sept. 16, 1994.

For Appellant: *Colonel Terry J. Woodhouse* and *Captain Ursula P. Moul.*

For Appellee: *Colonel Jeffery T. Infelise.*

*Opinion of the Court*

COX, Judge:

1. In October 1991, the accused was tried by a general court-martial composed of a military judge sitting alone, at Carswell Air Force Base, Texas. He was charged with using cocaine on or about April 10 and 16, 1991, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. After arraignment, defense counsel made a motion to dismiss the charge on two grounds: First, the defense contended that the accused had self-identified under Air Force Regulation (AFR) 30–2 (19 Aug 1988)[1] and was, therefore, protected from prosecution under the Uniform Code. Second, the defense sought to exclude evidence of a cocaine-positive-urinalysis result on the ground that the

---

1. This regulation allows drug and alcohol abusers to enter an on-base rehabilitation program without fear of prosecution under the Uniform Code of Military Justice for certain admissions of drug use.

accused consented "under circumstances tantamount to a request for a statement" without prior advisement of his rights pursuant to Article 31, UCMJ, 10 USC § 831. The military judge ruled that the accused had not self-identified his drug problem for purposes of AFR 30–2 and was, therefore, not entitled to protection from prosecution. The judge further ruled that the accused had voluntarily consented to the urinalysis; the results were admissible; and the accused had not been entitled to advisement of his Article 31 rights. The motion to dismiss was denied. Contrary to his pleas, but based on a confessional stipulation, the accused was convicted as charged with a minor exception.[2]

2. On appeal of the issue, the Court of Military Review, in an unpublished opinion, affirmed the military judge's decision that the accused had failed to self-identify under AFR 30–2. We granted the petition for review of the following issue:

WHETHER THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION TO DISMISS BECAUSE THE EVIDENCE SUPPORTING APPELLANT'S CONVICTION WAS IMPROPERLY OBTAINED BY THE GOVERNMENT AFTER HE SOUGHT ASSISTANCE FOR A DRUG PROBLEM UNDER THE PROTECTIONS OF AIR FORCE REGULATION (AFR) 30–2.

3. We further specified the following issue for review:

WHETHER THE RESULTS OF THE URINALYSIS SHOULD BE SUPPRESSED UNDER THE FACTS OF THIS CASE.

4. In support of the motion to dismiss, the accused made the following offer of proof.[3] After a night of drinking and cocaine use on April 7, 1991, the accused failed to return home to his wife. Early in the morning of April 8, the accused called his wife and asked her to meet him at Carswell AFB to discuss his behavior. During this meeting, the accused acknowledged a drinking problem and the previous night's cocaine use. He then asked his wife to accompany him to the office of his commander, Lieutenant Colonel (Lt Col) Sadberry, where he intended to admit to his drinking problem and to the cocaine use. On their arrival, however, they found that the commander was not in his office. The accused and his wife left the commander's office briefly to arrange for the accused's wife to have the day off from work. When they returned, they learned that the commander would be in a meeting all day. They were then referred to and met with the First Sergeant, Senior Master Sergeant (SMSgt) Smithson. During this meeting, the accused admitted only that he needed help with a drinking problem; he made no reference to the cocaine use. SMSgt Smithson then explained the on-base alcohol rehabilitation program to the accused and, after a question from the accused's wife, described it as a family program. He then said that the accused "would be entered into the program during the next week."

5. On the way home, the accused's wife asked him why he had not told SMSgt Smithson about his cocaine use. He replied that he did not trust SMSgt Smithson, who he believed "had a reputation" for "burn[ing]" rather than helping his troops. The accused also said that he felt the cocaine use was a result of his drinking problem and that, if the alcohol rehabilitation "did not work," he would then "get further help."

6. During the following week, the accused was not contacted regarding the program. On Friday night, April 12, 1991, the accused went on another drinking spree and again used cocaine. When the accused did not return home the following morning (April 13), his wife telephoned Lt Col Sadberry for help and explained the situation in full. Specifically, she informed the commander that the accused had abused both alcohol and

---

2. The accused was sentenced to a bad-conduct discharge, confinement and forfeiture of $250.00 pay per month for 4 months, and reduction to E–1. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence.

3. The Government stipulated that the offer of proof contained in the defense motion to dismiss was accurate and factual.

cocaine and was waiting to enter the rehabilitation program, but she feared he was presently in trouble. Lt Col Sadberry "told her not to worry; that they would handle things on Monday and that he would have his First Sergeant attend to it." When the accused returned home later that morning, his wife told him that she had informed Lt Col Sadberry of his alcohol and drug use.

7. While at work on Monday, April 15, the accused was called to SMSgt Smithson's office and was accompanied there by a MSgt Tuck and a Technical Sergeant Allen. After telling him to sit down, SMSgt Smithson informed him that "an anonymous caller" had reported him as a drug user. The accused assumed this was a lie. SMSgt Smithson then told the accused, "This is your chance to clear your name, but if it's true, you're going to get discharged and probably court-martialed." SMSgt Smithson then asked the accused "if he wanted to volunteer to take a urinalysis" test. The accused agreed, and the First Sergeant told him to read and then sign a consensual urinalysis form. The accused was not given his Article 31 rights. He signed the form and gave a urine sample which later tested positive for cocaine.

8. Notably, the accused specifically stipulated that he never admitted to either SMSgt Smithson or Lt Col Sadberry that he had used cocaine.

The relevant sections of AFR 30–2 state:

**4–2. Methods of Identification:**

a. **Self-Identification.** Air Force members who may have a drug or alcohol problem are encouraged to seek assistance and refer themselves for evaluation. Following the evaluation, the commander, in consultation with the SAO [Social Action Office] and the medical authority, will determine an appropriate course of action. Air Force Substance Abuse education programs will promote awareness of the self-identification program.

(1) Drugs. Commanders will grant limited protections for Air Force members who, with the intention of entering the Air Force SART [Substance Abuse Reorientation and Treatment] Program, voluntarily disclose evidence of prior personal drug use or prior possession of drugs for personal use. Such disclosure may not be used against a member in an action under the UCMJ or on the issue of characterization of service in a separation proceeding as long as the following apply:

(a) Member is seeking assistance and voluntarily reveals the nature and extent of drug involvement to the unit commander, first sergeant, SAO personnel, or designated military medical authority....

\* \* \*

(b) The limited protections under this section for self-identification do not apply to:

\* \* \*

2. Disciplinary or other action based on independently derived evidence, including evidence of continued drug abuse after initial entry into a treatment and rehabilitation program (but not including the results of command directed drug testing).

9. In its motion, the defense contended that the accused had self-identified under AFR 30–2 and that all evidence obtained concerning his drug abuse was, therefore, not independently derived within the meaning of AFR 30–2. However, the military judge concluded that none

of the accused's actions, or Mrs. Avery's actions, either individually or collectively, taken on 8 April, 13 April, or 15 April 1991 operated to qualify the accused for protection under the self-identification program of AFR 30–2. The protections offered by ... this regulation were not triggered in this case, because the accused did not voluntarily disclose evidence of his drug abuse at a time prior to independently derived evidence being obtained by the government....

10. The Court of Military Review made a similar finding on appeal:

We are unwilling to extend the self-identification protection of AFR 30–2 to these facts. A member will not be shielded by the regulation unless he or she "is

seeking assistance and voluntarily reveals the nature and extent of drug involvement...." AFR 30–2, para. 4–2a(1)(a) (emphasis added). Here, the appellant said only that he needed help with an alcohol problem. Neither he nor his wife ever made the request for assistance with *drugs* required for refuge under AFR 30–2.

Unpub.op. at 3 (citations omitted).

■ 11. The decisions of the military judge and the Court of Military Review in denying the defense motion to dismiss were factual determinations which should not be disturbed unless they are unsupported by evidence in the record or they are clearly erroneous. *United States v. Burris,* 21 MJ 140, 144 (CMA 1985). Here, the record indicates that the accused never came forward with information concerning his drug abuse, a fact he specifically stipulated to. Although the accused met personally with his First Sergeant with the sole mission of getting help, he mentioned only his alcohol abuse to him. And although the accused contends that he did not trust SMSgt Smithson with knowledge of his drug abuse, the accused never attempted to report himself to Lt Col Sadberry, the person he apparently did trust, during the week that followed the meeting with SMSgt Smithson. Further, in his own stipulation, the accused stated that he expected that treatment for the alcohol abuse would also end his drug abuse. Whether realistic or not, this clearly indicates that the accused had decided not to report or treat his drug problem.

12. Finally, although AFR 30–2 speaks only in terms of the drug abuser's self-identification and there is no language indicating that others may report the abuse, we need not decide here whether a wife or other family member might trigger the sanctuary of the program. It is clear that, for whatever reason, the accused intentionally avoided making his own admissions of drug use. Family involvement is certainly encouraged after an abuser has self-identified and has been accepted into the program.[4] The evidence in this record therefore supports the findings of both the military judge and the Court of Military Review.

■ 13. We turn now to the specified issue and the matter of whether the results of the urinalysis should have been suppressed. As noted above, the military judge considered a motion for suppression and denied it, finding that

under M.R.E. [Mil.R.Evid.] 314(e), this court is persuaded by clear and convincing evidence that on 15 April 1991 the accused voluntarily consented to a urinalysis, and did not merely submit to the color of authority. The fact that the first sergeant did not read the Article 31(b) rights to the accused is not consequential in this case. More importantly, under M.R.E. 314(e)(4), the accused was correctly apprised of his rights to withhold consent or to consent, as well as the consequences of each option.

14. Where a government agent has requested a servicemember's consent to search and valid consent has been given, "a constitutionally reasonable search may" be made. *See United States v. Frazier,* 34 MJ 135, 137 (CMA 1992).

15. Specifically, Mil.R.Evid. 314(e), Manual for Courts–Martial, United States, 1984, states:

(1) *General Rule.* Searches may be conducted of any person or property with lawful consent.

\*     \*     \*

(4) *Voluntariness.* To be valid, consent must be given voluntarily. Voluntariness is a question to be determined from all the circumstances. Although a person's knowledge of the right to refuse to give consent is a factor to be considered in

---

4. Acceptance into the program is conditional on five prerequisites—the applicant must not have previously been:
    (1) Apprehended for drug involvement;
    (2) "Placed under investigation for drug abuse";
    (3) "Ordered to give a urine sample as part of the Drug Testing Program";

    (4) "Advised of a recommendation for administrative separation for drug abuse"; or
    (5) Entered into SART for drug abuse—para. 4–8(d)(3), AFR 30–2.
Para. 4–2*a* (1)(a), AFR 30–2.

determining voluntariness, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Mere submission to the color of authority of personnel performing law enforcement duties or acquiescence in an announced or indicated purpose to search is not a voluntary consent.

(5) *Burden of proof.* Consent must be shown by clear and convincing evidence. The fact that a person was in custody while granting consent is a factor to be considered in determining the voluntariness of the consent, but it does not affect the burden of proof.

See *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *United States v. White*, 27 MJ 264 (CMA 1988).

16. In *United States v. McClain*, 31 MJ 130, 133 (CMA 1990), we considered Mil. R.Evid. 314 and noted that, when "a military member is asked to *consent* to a urinalysis by superior authority, we look at the facts and circumstances surrounding the consent to determine if in fact it is voluntary." *See United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). *See also United States v. Roa*, 24 MJ 297 (CMA 1987). Further, we confirmed that searches of a servicemember's urine for drugs can be consensual. *United States v. McClain, supra.*

17. We also held in *United States v. Frazier, supra* at 137, that a lawful request for consent is not interrogation and the consent itself is not a statement. There is, therefore, no need to give advisement of Article 31 rights in advance of the request. *United States v. Frazier* and *United States v. Roa*, both *supra*, and cases cited therein. *See United States v. Murphy*, 39 MJ 486 (CMA 1994).

18. In the instant case, SMSgt Smithson asked the accused to read and sign a consent form which stated:

This sample will be analyzed for the presence of illegal drugs. I know that I have the legal right to either consent to a search, or refuse to give my consent. I understand that, if I do consent to a search, anything fo[u]nd in the search can be used against me in a criminal trial or in any other disciplinary or administrative procedure. I also understand that, if I do not consent, a search cannot be made without a warrant or other authorization recognized in law.

I have carefully considered this matter. I am giving my consent voluntarily and of my own free will, without having been subject to any coercion, unlawful influence or unlawful inducement, and without any promise or reward, benefit, or immunity having been made to me. I have read and understand this entire acknowledgement of my rights and do voluntarily consent to providing a urine sam[pl]e for urinalysis.

19. The accused read and signed the form, and there is no evidence that the First Sergeant said or suggested that he would order the urinalysis if the accused refused to sign. Further, SMSgt Smithson's comment that the accused would probably be court-martialed if he tested positive only confirmed what the consent form stated. Since the accused read the form and asked no questions, it must be presumed, in the absence of contrary indications in the record, that he knew he had a choice about whether to consent. *See United States v. Whipple*, 28 MJ 314 (CMA 1989).

20. Finally, it was noted that during argument on the motion, defense counsel suggested that the accused believed he had triggered the protection of AFR 30–2 when he learned that his wife had told Lt Col Sadberry of his alcohol and drug problem. Counsel contended that this knowledge induced appellant to take the urinalysis and therefore made the consent uninformed and involuntary. There is, however, no evidence in the record that the accused knew of AFR 30–2 or its protections before he consented to the urinalysis.

21. As noted above, the accused stipulated that he originally wanted to tell Lt Col Sadberry about his drug use. He specifically stated that he wanted to tell his commander even though he expected that his doing so would result in punishment; he made no reference to protection under a rehabilitation

program; and, although SMSgt Smithson described the alcohol rehabilitation program to the accused during their meeting, there is no suggestion in the stipulation or elsewhere in the record that the accused was made aware of the protections under AFR 30–2. There is, therefore, no reason to believe that the existence of AFR 30–2 affected his decision to consent to the urinalysis. We find, on these facts, that the accused knowingly volunteered for the urinalysis, and the military judge did not err in denying the motion to suppress the results.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.