UNITED STATES, Appellee

v.

Michael R. OATNEY, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 95–0280.
Crim.App. No. 92–2024.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 6, 1995.

Decided Sept. 30, 1996.

For Appellant: *Lieutenant Commander Howard B. Goodman,* JAGC, USN (argued); *Major Hagen W. Frank,* USMC (on brief).

For Appellee: *Lieutenant John R. Livingston, Jr.,* JAGC, USN (argued); Colonel *Charles Wm. Dorman,* USMC, and *Commander D.H. Myers,* JAGC, USN (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

In April of 1992, appellant was tried by a general court-martial composed of a military judge sitting alone at Okinawa, Japan. Pursuant to his pleas, he was found guilty of an assault in which grievous bodily harm was intentionally inflicted. Contrary to his pleas, he was found guilty of obstructing justice and communicating a threat (2 specifications), in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 USC §§ 928 and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 4 years, total forfeitures, and reduction to pay grade E–1. On August 13, 1992, the convening authority approved the sentence as adjudged, except he suspended confinement in excess of 18 months for a period of 12 months. On April 29, 1994, a panel of the then-Court of Military Review dismissed one specification of communicating a threat and reduced confinement by 6 months, but otherwise affirmed the findings of guilty and sentence as adjudged. On mo-

tion of the Government, reconsideration *en banc* was ordered. On November 4, 1994, the now-Court of Criminal Appeals, sitting *en banc,* affirmed the adjudged findings of guilty and the sentence. 41 MJ 619.

On March 23, 1995, this Court granted review on the following two issues of law:

I

WHETHER COMMUNICATING A THREAT IS A LESSER–INCLUDED OFFENSE OF OBSTRUCTION OF JUSTICE WHERE COMMUNICATING THE THREAT IS THE *ACTUS REUS* FOR THE OBSTRUCTION CHARGE.

II

WHETHER—ASSUMING THE OFFENSES ARE SEPARATE—NOTWITHSTANDING THIS COURT'S DECISION IN *UNITED STATES V. TETERS,* 37 MJ 370 (CMA 1993), *CERT. DENIED,* 510 U.S. 1091, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994), THE DOCTRINE OF SENTENCING MULTIPLICITY SURVIVES BECAUSE THE PRESIDENT HAS INDICATED THAT AN ACCUSED SHOULD NOT BE SUBJECTED TO MULTIPLE PUNISHMENT FOR A SINGLE ACT.

We agree with the excellent *en banc* opinion of the Court of Criminal Appeals and affirm the findings of guilty and the sentence in this case. *See United States v. Teters,* 37 MJ 370 (CMA 1993).

Appellant was charged with and found guilty of the following offenses, *inter alia:*

Charge II: Violation of the UCMJ, Article 134.

Specification: In that Lance Corporal Michael R. Oatney, U.S. Marine Corps, did, at Okinawa, Japan, on or about 16 January 1992, wrongfully endeavor to impede an investigation by communicating to the said Private First Class Christopher J. Glezman, U.S. Marine Corps, a threat "to physically injure his wife and himself" unless he, the said Private First Class Glezman, provided false information to Naval Investigative Service Agents during the course of their investigation.

Charge III: Violation of the UCMJ, Article 134.

Specification 1: In that Lance Corporal Michael R. Oatney, U.S. Marine Corps, did, at Okinawa, Japan, on or about 16 January 1992, wrongfully communicate to Private First Class Christopher J. Glezman, U.S. Marine Corps, a threat to injure the aforesaid Private First Class Christopher J. Glezman by saying to him "I'm going to fuck you up."

Specification 2: In that Lance Corporal Michael R. Oatney, U.S. Marine Corps, did, at Okinawa, Japan, on or about 27 January 1992, wrongfully communicate to Private First Class Christopher J. Glezman, U.S. Marine Corps, a threat to injure his wife by saying to him "you want to see your wife in one piece, don't you."

These findings of guilty are supported by the following testimony in the record from Private Glessman:

Q. [Trial Counsel] Okay. Did he ever threaten you when you were talking that day? [January 16]

A. After the incident occurred, yes, he did.

Q. Okay, describe a little bit about that. What did he say?

A. Well, that evening we went out in town. The incident occurred. I came back to base. I was in the cube and he came back and, you know, I asked him why he did it and—I came back to base about an hour and a half later. He came back and I asked him why he had hit the victim out there.

Q. And you seen him hit the victim?

A. I saw him hit the victim.

Q. And you were with him that night?

A. Yes I was. Well, I was in the cube. Shortly after, he came back and he told me that he jumped the fence to get back on base and that the MPs were all over the place. And I asked him why he did it and he said he didn't know. He was just drunk. It just happened. *And I said, "Well, if NIS asks me, I'm going to tell them what happened." And he said, "You*

*better keep your mouth shut about this."* I said, *"Well, I'm not going to lie to anybody about it."* And he said, *"I'll fuck you up if you don't keep your mouth shut."*

Q. I want you now to think ahead, okay, to 27 January 1992. Do you remember that day?

A. Yes, I do.

Q. Do you remember seeing the accused on that day?

A. Yes, I do.

Q. Describe what happened.

A. That was the day we gave our statement to NIS. I believe that was the day.

Q. Okay, did you talk to the accused that day?

A. I talked to him pretty much every day after the incident occurred. He would come up to me and start asking me if I had said anything. And I told him—He threatened to hurt my wife. He said he had friends back in California. He knew where I lived and where my wife would be. But at that time my wife was in Michigan and she would [be] in no danger at that time.

(Emphasis added.)

Defense counsel made a motion that the judge find appellant's conviction for communication of a threat (specification 1, Charge III) multiplicious with his conviction for obstruction of justice (Charge II). The military judge denied this motion. The record states the following:

DC: No, sir, other than the defense counsel believes that they are multiplicious, sir.

MJ: Does the defense have any authority for his position?

DC: Sir, the defense counsel would have to take a couple minutes, sir, to look it up.

MJ: From the absence of authority to the contrary, it is my perception that the offense of obstructing justice or impeding an investigation may be done so through using a less offensive means. A means of language or communication which does not by itself constitute an offense. That is, a person may simply plead with someone or a person may ask someone or beg someone to not provide information for an investiga-

tion. But when the language that is used to attempt to impede an investigation is in and of itself a communication of a threat, that constitutes a separate offense. Therefore, it is not my belief at this time, absent evidence to the contrary, that the specifications should be considered multiplicious. The act of wrongfully endeavoring to impede an investigation has a different societal standard or motivation behind it. It is an attempt to undercut the very structure of society. Whereas the act of communicating a threat to injure someone is a threat against an individual and only peripherally a threat against society.

Any further comments from counsel?

TC: No, sir.

DC: Sir, the defense would contend that the charges are multiplicious but the defense doesn't have anything to refute the Court's interpretation at the present time, sir.

— — —

■ The first granted issue in this case was framed by appellant and is based on the decision of this Court in *United States v. Foster*, 40 MJ 140, 146 (1994) (a subset of elements, for purposes of determining a lesser-included offense, means each element of the lesser-included offense is "rationally derivative" of an element of the greater offense). *See also United States v. Schoolfield*, 40 MJ 132 (CMA 1994). He asserts under this decision that his communicating-a-threat offense of January 16 is a lesser-included offense of his obstruction-of-justice offense of that same date. Appellant thus contends that, absent evidence to the contrary, Congress can be presumed to have intended only one conviction in these circumstances. *See Ball v. United States*, 470 U.S. 856, 861, 105 S.Ct. 1668, 1671–72, 84 L.Ed.2d 740 (1985); *United States v. Teters*, 37 MJ 370, 373 (CMA 1993); *see generally Rutledge v. United States*, — U.S. —, —, 116 S.Ct. 1241, 1247, 134 L.Ed.2d 419 (1996) (two different statutes define same offense because one is lesser-included offense of the other).

Appellant's lesser-included-offense argument is based on a comparison of the ele-

ments of his offenses as delineated in paragraphs 96b and 110b, Part IV, Manual for Court–Martial, United States, 1984. Both of these offenses were charged under Article 134, and the President's explanation of these offenses fully conforms with our case law. *See United States v. Gilluly*, 13 USCMA 458, 32 CMR 458 (1963); *United States v. Holiday*, 4 USCMA 454, 16 CMR 28 (1954). Accordingly, we agree that this is the appropriate source from which to draw the elements of these offenses for purposes of determining their multiplicity for findings. *See United States v. Standifer*, 40 MJ 440 (CMA 1994); *United States v. Guerrero*, 28 MJ 223, 226–27 (CMA 1989).

The court below correctly noted the elements of the offenses subject to comparison in this case. Senior Judge Reed stated:

The elements of communicating a threat under Article 134, UCMJ are:

(1) That the accused communicated certain language expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently, or in the future;

(2) That the communication was made known to that person or to a third person;

(3) That the communication was wrongful; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MCM, Part IV, ¶ 110b. The elements of obstructing justice, on the other hand, are:

(1) That the accused wrongfully did a certain act;

(2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

(3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the

armed forces or was of a nature to bring discredit upon the armed forces.

MCM Part IV, ¶ 96b.

41 MJ at 628. He further stated:

Obstruction of justice does not require proof of an individual communicating a present intent to injure and, in certain situations, may not require proof of any underlying offense. Communication of a threat does not contain as an element an intent to "influence, impede, or otherwise obstruct the due administration of justice" which is required to establish an obstruction of justice offense. Since each offense requires proof of a different element, the *Blockburger* test is met. *See also United States v. Gill*, 40 MJ 835 (AFCMR 1994).

41 MJ at 628–29.

Appellant nonetheless eschews a technical comparison of the elements of the offenses in this case and instead asks this Court to engage in a more "practical" or "realistic" comparison. In *United States v. Teters*, 37 MJ 370 (CMA 1993), however, we rejected the "actus reus" argument and held that forgery and larceny were separate offenses even though the forgery was the means of committing the larceny. *Teters* adopted the elements test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and rejected the "single-impulse" and "fairly-embraced" tests for multiplicity on findings. *See United States v. Foster, supra*.

We note, further, that the "qualitative-" comparison doctrine utilized in *United States v. Foster, supra*, was not intended to resurrect the recently repudiated "means" test of *United States v. Johnson*, 26 MJ 415, 419 (CMA 1988). *See United States v. Teters, supra* at 378. Moreover, the pragmatic or realistic comparison approach of *Foster* still requires, at the very least, a conclusion that the greater offense could not possibly be committed without committing the lesser offense. *See United States v. Schoolfield*, 45 MJ at 137 (rape and indecent acts); *United States v. Foster*, 40 MJ at 146 (sodomy and indecent acts). No *"sine qua non"* relationship exists as a matter of law between obstruction of justice and communicating a

threat. *See Ball v. United States, supra; cf.* para. 96(c), Part IV (wrongfully intimidating a witness is one example of many ways of committing obstruction of justice).[1] Accordingly, we reject appellant's multiplicity-for-findings argument.

■ The second granted issue in this case asks whether the military judge erred in treating the offenses of obstruction of justice and communicating a threat as separate for purposes of punishment. He asserts that, since these offenses were based on one act and were motivated by a single intent (intent to hinder), there should only be one punishment. He rests his argument on the Discussion to RCM 1003(c)(1)(C), Manual, *supra*,[2] and the decision of this Court in *United States v. Morrison*, 41 MJ 482 (1995).

*Morrison* held that the *Teters/Blockburger* test also applied to sentencing. In *Morrison* we said, "The language of RCM 1003(c)(1)(C) is thus virtually the same as the 'elements' tests in *Blockburger*." 41 MJ at 484. We held that, in the absence of evidence of congressional intent to the contrary, offenses that are separate for findings are separate for sentencing, except for compound and predicate offenses.

This Court in *Morrison* specifically rejected the argument that the Discussion to RCM 1003(c)1(C) somehow mandated use of a certain sentencing theory by a judge or court members. Instead, it held that the court-martial rule itself (RCM 1003(c)(1)(C)) constituted the effective limit on a court-martial sentencing authority and, otherwise, the judge's discretion controlled as to which sentencing theory to apply. As noted above, the offenses at issue on this appeal were separate under RCM 1003(c)(1)(C) (the *Blockburger* rule), and the military judge articulated his rationale for refusing to exercise his dis-

1. Paragraph 96c, Part IV, Manual for Courts-Martial, United States, 1984, states:

Examples of obstruction of justice include wrongfully influencing, intimidating, impeding, or injuring a witness, a person acting on charges under this chapter, an investigating officer under RCM 406, or a party; and by means of bribery, intimidation, misrepresentation, or force or threat of force delaying or preventing communication of information relating to a violation of any criminal statute of the United States to a person authorized by a department, agency, or armed force of the United States to conduct or engage in investigations or prosecutions of such offenses; or endeavoring to do so. *See also* paragraph 22 and Article 37.

2. This Rule states:

(C) *Multiplicity.* When the accused is found guilty of two or more offenses, the maximum authorized punishment may be imposed for each separate offense. Except as provided in paragraph 5 of Part IV, offenses are not separate if each does not require proof of an element not required to prove the other. If the offenses are not separate, the maximum punishment for those offenses shall be the maximum authorized punishment for the offense carrying the greatest maximum punishment.
**Discussion**
See also RCM 906(b)(12); 907(b)(3)(B).
The basis of the concept of multiplicity in sentencing is that an accused may not be punished twice for what is, in effect, one offense. Offenses arising out of the same act or transaction may be multiplicious for sentencing depending on the evidence. No single test or formula has been developed which will resolve the question of multiplicity.

The following tests have been used for determining whether offenses are separate. Offenses are not separate if one is included in the other or unless each requires proof of an element not required to prove the other. For example, if an accused is found guilty of escape from confinement (*see* paragraph 19, Part IV) and desertion (*see* paragraph 9, Part IV) which both arose out of the same act or transaction, the offenses would be separate because intent to remain permanently absent is not an element of escape from confinement and a freeing from restraint is not an element of desertion. However, if the accused had been found guilty of unauthorized absence instead of desertion, the offenses would not be separate because unauthorized absence does not require proof of any element not also required to prove escape.
*Even if each offense requires proof of an element not required to prove the other, they may not be separately punishable if the offenses were committed as the result of a single impulse or intent.* For example, if an accused found guilty of larceny (*see* paragraph 46, Part IV) and of unlawfully opening mail matter (*see* paragraph 93, Part IV) opened the mail bag for the purpose of stealing money in a letter in the bag, the offenses would not be separately punishable. Also, if there was a unity of time and the existence of a connected chain of events, the offenses may not be separately punishable, depending on all the circumstances, even if each required proof of a different element. (Emphasis added.)

cretion to treat these offenses as one under a "single impulse" theory. *See United States v. Traeder,* 32 MJ 455, 456–457 (CMA 1991). We find no legal error by the judge in treating these offenses as separate for sentencing.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Judges CRAWFORD and GIERKE concur.

COX, Chief Judge, with whom EVERETT, Senior Judge, joins (dissenting):

This is the kind of case that makes my hair turn gray. Perhaps I was a trial judge too long. Why are we trying so hard to make something so simple so complicated?

Has anybody stopped to ask the questions: "What did Oatney do?"; "Why did he do it?"; and "What provision of the Uniform Code of Military Justice did he violate?"

The answers are not difficult.

1. He communicated a threat.

2. He did it to obstruct justice.

3. He violated Article 134, Uniform Code of Military Justice, 10 USC § 934.

That is all he did! If you take away the fact that his intent was to obstruct justice, what is left? His conduct, communicating a threat, was still prejudicial to good order and discipline, and violated Article 134: The *Blockburger* rule. *See Blockburger v. United States,* 284 U.S. 299, 303–04, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). Remember that one?

If you take away his conduct, what is left? Nothing! Piling on. 15–yard penalty! *United States v. Foster,* 40 MJ 140, 144 n. 4 (CMA 1994).

In *United States v. Teters,* 37 MJ 370 (CMA 1993), we were not looking at one act that violated one statute but, rather, at one transaction that violated two separate and distinct statutes. If Oatney had assaulted the victim instead of threatening him, then his conduct would have violated two separate statutes, each of which would have required proof of an element not required by the other, thus two offenses under *Teters.* This case involves one act that violates one statute, and it is governed by *United States v. Weymouth,* 43 MJ 329 (1995).

I am not trying to criticize my colleague's learned opinion. He uses the right buzzwords and the right analytical approach. The fact is, however, that he ignores Article 79, UCMJ, 10 USC § 879, and the legion of cases dealing with the doctrine of lesser-included offenses. Article 134, unlike the enumerated articles, proscribes conduct prejudicial to good order and discipline. It does not subdivide one act into multiple components and authorize numerous convictions and multiple sentences for one act. Therefore, once the conduct is defined, we must look at the pleadings and the facts of the case to determine the appropriate punishment for the act of misconduct.

If we carried the analysis used by the majority opinion to its logical conclusion, we would hold that larceny is not included in robbery because it is theoretically possible to commit the offense of larceny without having committed the offense of robbery. Likewise, one could be convicted of both rape and assault, because it is possible to assault someone without raping them. It is true that one can communicate a threat without obstructing justice. But it cannot be done in this case.