UNITED STATES

v.

Pedro A. TOLLINCHI, 111 60 0364,
Sergeant (E–5), U.S. Marine
Corps.

NMCM 98 00246.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 11 Dec. 1996.

Decided 16 July 1999.

LCDR L.J. Lofton, JAGC, USN, Appellate Defense Counsel.

LT James E. Grimes, JAGC, USNR, Appellate Government Counsel.

Before SEFTON, Chief Judge, and ANDERSON and ROLPH, Appellate Military Judges.

SEFTON, Chief Judge:

Appellant was tried in December 1996 on various dates by a general court-martial composed of officer and enlisted members.[1] He was convicted contrary to his pleas of attempted oral sodomy, two specifications of violating a lawful general order, rape, sodomy, two specifications of indecent assault, and adultery, in violation of Articles 80, 92, 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 892, 920, 925, and 934 (1994). Appellant was sentenced to confinement for 5 years, total forfeitures, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

We have carefully reviewed the entire record of trial, appellant's brief and assignment of errors, and the Government's response. We find the proceedings correct in law and fact, and that no error prejudicial to the substantial rights of appellant occurred in the proceedings below. Arts. 59(a) and 66(c), UCMJ. Our reasoning follows.

### Factual Background

From May 1995 to January 1996, appellant was assigned as a recruiter in Bronx, New York. In that capacity, appellant met NF, a high school student, whom he recruited into the Marine Corps.[2] On 6 December 1995, NF successfully completed the qualification testing required for enlistment. Following the test, NF spoke to appellant, who indicated that he had done well and that the two should meet to discuss the test later that day. NF then met with his then girlfriend, 17–year–old EH, at NF's house. After a few hours, both went to appellant's office. Appellant then drove the couple back to NF's house so that his parents could sign parental consent forms allowing NF to join the Marine Corps. Recruiting files, for which appellant was responsible, indicated that these forms were signed at 1930 on 6 December 1995.[3] Prosecution Exhibit 2; Record at 89.

---

1. A post-trial session was held on 28 October 1997. Record at 388, *et seq.* Appellant's Brief and Assignment of Errors of 29 Dec 1998 incorrectly notes the composition of the panel that tried him. The record establishes that he was tried by officer and enlisted members. *Compare* Appellant's Brief of 29 Dec 1998 at 1 *with* Record at 39.

2. At the time of his testimony, NF was in recruit training at the Marine Corps Recruit Depot, Parris Island, South Carolina, the situs of the trial. Record at 104.

3. At the time in question, Gunnery Sergeant [GySgt] Angel Figueroa, U.S. Marine Corps, was the noncommissioned officer in charge [NCOIC] of appellant's office. GySgt Figueroa explained that Prosecution Exhibit 2 was a "prospective applicant card" [PAC]. The PAC is used by a recruiter, who is responsible for its completion,

After 30 to 45 minutes at NF"s house, appellant drove EH and NF back to appellant's office. NF thought they were returning to fill out more paper work. EH thought they were all going to go out for dinner. However, neither of their expectations eventualized.

Once back at the recruiting office, appellant produced a bottle of liquor and suggested that the three of them have a drink to celebrate NF"s commitment to the Marine Corps. After an initial drink, appellant continued to "toast" NF and persuaded NF and EH to take several more drinks, until both were intoxicated. Appellant then told EH she should kiss NF to celebrate. EH was pressed by appellant to "give him a real kiss." Appellant continued to press for more passion, ultimately encouraging the couple to disrobe and become ever more physically intimate. Soon thereafter, appellant moved closer to the couple and touched EH on the breast and vaginal area. He then pushed NF over and began to perform cunninlingus on EH. Soon thereafter, he entered her vaginally with his penis. Appellant then desisted, and encouraged NF to commit oral sodomy on EH. Appellant then moved around NF, and attempted to place his penis in EH's mouth. NF testified that in order to dissuade appellant, and at her insistance, he feigned intercourse with EH. Appellant then began to masturbate, eventually ejaculating on EH's breasts and partly on NF"s back, as they lay on the floor of the office. EH became hysterical, got up, and went to the head. Appellant dressed, gave NF $20 for taxi fare, and left the office.

### Sufficiency of the Evidence

■ We must, ourselves, independently determine both the legal and factual sufficiency of the evidence presented at trial. *United States v. Turner,* 25 M.J. 324 (C.M.A. 1987). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner,* 25 M.J. at 324 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The test for factual sufficiency "is whether, after weigh-

ing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the reviewing court are themselves convinced of the accused's guilt beyond a reasonable doubt." *Id.* at 325, 99 S.Ct. 2781.

■ The term reasonable doubt does not mean that the evidence must be free from conflict. See *United States v. Lips,* 22 M.J. 679, 684 (A.F.C.M.R.1986). Appellant claims that the evidence was insufficient to support findings of guilty of the offenses of rape, attempted oral sodomy, sodomy, and indecent assault on EH. He is mistaken. We have thoroughly reviewed the record and are convinced that the evidence supports the findings of guilty. While there are variances in the testimony of the primary Government witnesses, NF and EH, we are left with no question as to the fact that their recollection of events more than adequately support the occurrence of the offenses of which appellant was convicted. We ourselves independently find the facts recounted in the previous section of this opinion to have established the elements of each offense beyond a reasonable doubt.

Notwithstanding their intoxication, the two were able to remember appellant's conduct on the night of the offenses with ringing clarity. The evidence on the offenses in question was just as clearly before the trier-of-fact below, and is in the record for our review today. Appellant asserts that EH and NF were not credible. Appellant's Brief and Assignment of Errors of 29 Dec 1998 at 7–8. He claims that EH delayed in reporting the rape, and only told her mother so she could go to a concert. *Id.* EH, like many rape victims, felt guilty as a result of the events. Record at 179. A few weeks after the rape she confided in a friend, and was convinced to contact the police. When she did so, the reception she received was, in her mind, unsympathetic, which dissuaded her from further reporting the offenses elsewhere. Record at 178–80. The friend in whom she had confided ultimately told a guidance counselor at her school, who called EH's mother. *Id.* EH's mother then talked

to record all pertinent information about a pro-                    spective recruit. Record at 85–89.

to her in March 1996 and convinced EH to tell her what had happened.

EH had no apparent ulterior motive in reporting these events and was obviously simply reluctant to report appellant's offenses. *Id.* Her version of events is corroborated on all salient points by NF. NF had no continuing romantic or friendship connection with EH at the time of trial, and no motive to lie, especially considering the extremely poor light in which his testimony cast him. In fact, he might well be presumed to have had many motivations to say that these events never occurred, since his own participation is hardly the pinnacle of honor, courage, or commitment.

We find the initial reticence by NF to "come clean" indicative more of his age, immaturity, confusion, and perhaps shame, than of any preconceived desire to somehow sully appellant's reputation. Record at 125–26. Appellant's claim that he is not guilty of rape because the Government did not prove force or lack of consent is unsupported in the record, save for his self-serving testimony to the contrary, which we decline to credit. We find that the evidence supports the fact that since the room was dark, and NF was already in a passionate position on the floor relative to EH, who was underneath him, she was in no position to voice her lack of consent. She would have, from our review of the evidence of record, been unaware of the attempt to penetrate her until it had already occurred. *United States v. Traylor*, 40 M.J. 248, 249 (C.M.A.1994)(rape is complete upon penetration; the victim's awareness of continuing penetration and failure to resist immaterial where she was unaware that the initial penetration was going to occur). The offense of rape was complete when appellant penetrated his victim. *Id.; see United States v. Hughes*, 48 M.J. 214 (1998).

We have no difficulty finding the evidence in this case both legally and factually sufficient.

### Effective Assistance of Counsel

██ Appellant next claims ineffective assistance of trial defense counsel. To demonstrate ineffective assistance of counsel, an appellant "must surmount a very high hurdle." *United States v. Smith*, 48 M.J. 136, 137 (1998)(quoting *United States v. Moulton*, 47 M.J. 227, 229 (1997)). We apply a "strong[ ] presum[ption] that counsel has provided 'adequate assistance.'" *United States v. Russell*, 48 M.J. 139, 140 (1998)(quoting *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Appellant must first show that his counsel's performance was so deficient that counsel was, in effect, "not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Moulton*, 47 M.J. at 229 (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). Then he must show "that the 'deficient performance prejudiced the defense ... [through] errors ... so serious as to deprive [him] of a fair trial, a trial whose result is reliable.'" *Id.*

██ Here, appellant alleges that his counsel was ineffective in not requesting phone records from the recruiting station where EH called her father and where appellant alleges NF called a taxi. He further alleges ineffective assistance because counsel failed to call an alibi witness and because his counsel instructed him to lie under oath. Appellant's Brief at 16. These claims are without merit. As to the first facet of his claim, we regard the phone records so collateral an issue that even if the phone records appellant moved to attach to the record were relevant and reflected what appellant claims they do, they would not have impacted appellant's case. Appellant's counsel was not deficient and appellant was not prejudiced. *Moulton*, 47 M.J. at 229. While appellant provides evidence concerning *one* of the phone lines from the office where appellant worked, that office was equipped with *a number* of lines, any one of which could have been used for the local calls at issue. Since the record does not reflect which line EH used, the information appellant moved to attach is not even demonstrably relevant. Moreover, given the collateral nature of this information, even if appellant were correct, and we were to consider it convincing, it would hardly demonstrate a deficiency or prejudice in its absence. *Moulton*, 47 M.J. at 229. We find that, under these facts, appellant received a fair trial as it relates to the call by EH. *Id.* The same analysis applies to the call by NF,

even if we presume such a call was made from the office—a fact which is not in the record. Record at 177. We find no merit in the allegations concerning telephone calls.

As to the purported failure to call an alibi witness and an instruction to lie under oath, these issues were thoroughly examined in a post-trial session under Article 39(a), UCMJ, called to address these same allegations. Record at 388–466. We have carefully reviewed the record of that session and the allied documents. We have also carefully reviewed the military judge's clearly articulated findings on the issues. We find them completely based upon the facts before him, and reasonably arrived at. We adopt them as our own. The issue is without merit. Appellant's post-trial machinations do little to unring the bell which tolled his guilt so clearly at trial below.

## Multiplicity and Multiplication

Appellant next asserts that a number of charges and specifications should have been merged. Appellant's Brief at 13–14. The specification under Charge I alleged that appellant tried to place his penis in EH's mouth on 6 December 1995. Specification 1 under Charge II alleged that appellant violated an order by engaging in a nonprofessional personal relationship, wrongful sexual activity, and unauthorized physical contact, with NF and EH on 6 December 1995. Likewise, Specification 2 under that Charge alleged that appellant violated the same order by providing alcohol to NF and EH between 15 November and 6 December 1995. The specification under Charge III alleged that appellant raped EH on 6 December 1995. The specification under Charge IV alleged that appellant committed sodomy upon EH on 6 December 1995. Specification 1 under Charge V alleges that appellant indecently assaulted EH by touching her breasts and vagina. Specification 2 alleged another indecent assault resulting from appellant's ejaculation upon EH. Finally, Specification 4 alleged adultery in that appellant was married when he raped EH.[4]

In reliance on the discussion to RULE FOR COURTS-MARTIAL 307(c)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), appellant argues that the specifications herein are an unreasonable multiplication of charges. Appellant attempts to apply the distinction between multiplicity and the concept of "an unreasonable multiplication of charges" which surfaced in *obiter dictum* in an earlier opinion of this Court. *See United States v. Joyce*, 50 M.J. 567 (N.M.Ct.Crim. App.1999). The discussion for R.C.M. 307(c)(4) on which appellant relies states that "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." The discussion cites R.C.M. 906(b)(12) and R.C.M. 1003(c)(1)(C) as authority for this proposition. R.C.M. 906(b)(12) relates to motions to find offenses **multiplicious** for sentencing. R.C.M. 1003(c)(1)(C) deals with **multiplicity** for sentencing.

We find no mandate to apply a rule of unreasonable multiplication on these facts, based upon the *Joyce dicta*. Additionally, since this issue was not litigated, or even raised, at trial, we apply waiver. Since each offense in this case requires proof of an additional fact which the other does not, we simply apply the rule of *United States v. Teters*, 37 M.J. 370, 377 (C.M.A.1993)(quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). *See United States v. Denton*, 50 M.J. 189 (1998)(summary disposition). We do not find the reasoning of our superior court in an older, but only recently released summary disposition in *United States v. Wingate*, 50 M.J. 118 (1998)(summary disposition), to apply to the facts and circumstances of this case.

Thus, where two offenses require proof of separate elements, the offenses are not multiplicious. *United States v. Oatney*,

---

4. *See United States v. Hill*, 48 M.J. 352, 352–53 (1997)(summary disposition) (rape and adultery are separate offenses). At trial appellant moved to dismiss specifications originally listed as 3 and 4 of Charge V and these specifications were dismissed. Record at 27, 34. Appellant did not contend that the remaining charges and specifications were multiplicious or an unreasonable multiplication of charges.

45 M.J. 185, 188–89 (1996).[5] Even if one offense is the means by which the second offense is committed, the offenses are not multiplicious. *Oatney*, 45 M.J. at 188–89; (communicating a threat and obstruction of justice were not multiplicious, where the obstruction of justice charge arose out of the communication of a threat); *Teters*, 37 M.J. at 376 (forgery and larceny were separate offenses even though the forgery was the means by which the larceny was committed). When, as here, separate elements are necessary in order to establish different offenses, those offenses are not multiplicious. *Oatney*, 45 M.J. at 188–89. *Oatney* and *Teters* demonstrate that the fact that one offense is the means by which another offense is committed is immaterial. *Oatney*, 45 M.J. at 188–89; *Teters*, 37 M.J. at 376.

Even assuming, *arguendo*, these offenses were multiplicious, appellant forfeited this issue by failing to raise it at trial. In a contested court-martial, "[f]ailure to request dismissal of a specification on grounds of multiplicity constitutes [forfeiture], in the absence of plain error." *United States v. Carroll*, 43 M.J. 487, 488 (1996)(citing R.C.M. 905(e)). These specifications not only deal with separate actions but on their face, they allege separate acts. We find no plain error to negate the forfeiture of this issue. *United States v. Powell*, 49 M.J. 460 (1998). Appellant's claim of prejudice amounts to unsupported speculation, and does not amount to material prejudice to his substantial rights. *Powell*, 49 M.J. at 464–65. The assigned error is without merit.

### Post–Trial Delay

■ As appellant correctly points out, he was sentenced on 11 December 1996 and the convening authority took his action on 24 January 1998. Appellant's Brief at 14; Record at 385; Convening Authority's Action of 24 Jan 1998. Appellant's assertion that delay prejudicial to his substantial rights occurred in the promulgation of the convening authority's action which should provide him a basis for relief is totally devoid of merit.

Appellant appears to disregard his own counsel having requested delay at least twice. Since his clemency petition, once filed, claimed ineffective assistance of counsel at trial, the convening authority quite appropriately convened a fact-finding session held on 28 October 1997 to delve into the allegations. This session was held approximately one month after the allegations were made. We find no inordinate delay in the process there, nor do we find inordinate delay in the action on appellant's case in January 1998. In the interim, a record of the proceedings was prepared, authenticated, and routed to counsel. On 9 December 1997, appellant requested that a copy of the entire authenticated record, which had previously been served on Captain Baumann, be served on LT Phelan. Appellant's ltr of 9 Dec 1997. On that same day, LT Phelan was served with such a copy. On 16 December 1997, a copy of the addendum to the staff judge advocate's recommendation [SJAR] was mailed to LT Phelan. LT Phelan acknowledged receipt of the SJAR addendum on 7 January 1998. On 14 January 1998, LT Phelan indicated that he had no comments regarding the SJAR Addendum. The convening authority acted 10 days later. We find appellant's allegations of inordinate post-trial delay ludicrous under the circumstances. Even were we to find such delay, *which we do not,* appellant has suffered no demonstrable prejudice, and would thus be entitled to no remedy in any event. *United States v. Jenkins*, 38 M.J. 287, 288 (C.M.A.1993)(holding that appellant "must demonstrate some real harm or legal prejudice flowing from [the] delay" to be entitled to relief). We are, in fact, impressed at the obvious diligence on the part of the convening authority and his staff in carrying out their duties during the year-end holiday period with such aplomb. The issue is without merit.

### Merger of Specifications

■ Appellant next alleges error by the military judge in declining to merge Specifications 1 and 2 of Charge II, since both allege a violation of the same order. We find no error, in that the violations were factually

5. We likewise do not find *United States v. Weymouth*, 43 M.J. 329 (1995)(offenses may be multiplicious even with different elements, if each is drafted so as to encompass the elements of proof alleged in the other) applicable to the facts and circumstances of this case.

different. Specification 1 alleges violation of an order by engaging in a nonprofessional, personal relationship, wrongful sexual activity, and unauthorized physical contact with NF and EH on 6 December 1995. Specification 2 alleges a violation of the same order, but the conduct involved is separate and distinct: wrongfully supplying alcoholic beverages to the same minors, NF and EH. MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), Part IV, ¶ 16b(1). Given the separate and distinct elements of proof required by the two specifications at issue, they are not multiplicious. *Teters*, 37 M.J. at 377; see *also United States v. Ray*, — M.J. —, No. 9800117 (N.M.Ct.Crim.App. 6 July 1999)(*en banc*). Moreover, appellant forfeited this issue by his failure to raise it at trial. *Carroll*, 43 M.J. at 488 (citing R.C.M. 905(e)). This issue is likewise without merit.

### Forfeitures under Article 57(a), UCMJ

Appellant alleges he was subjected to impermissible forfeitures of pay under the operation of Article 57(a), UCMJ. Since this matter is administrative and does not affect the findings and sentence, we will return the record to the Judge Advocate General for review and administrative action as appropriate. *United States v. Gorski*, 47 M.J. 370 (1997).

### Conclusion

Accordingly, the findings and sentence as approved on review below are affirmed. The record is returned to the Judge Advocate General for review and action as appropriate concerning forfeitures of pay under the provisions of Article 57(a), UCMJ.

Judge ANDERSON and Judge ROLPH concur.