**UNITED STATES, Appellee,**

v.

**Pedro A. TOLLINCHI, Sergeant, U.S. Marine Corps, Appellant.**

No. 99–0965.
Crim.App. No. 98–0246.

U.S. Court of Appeals for the Armed Forces.

Argued April 5, 2000.

Decided Sept. 11, 2000.

Sullivan, J., concurred in part and dissented in part, and filed opinion.

Crawford, Chief Judge, filed dissenting opinion.

GIERKE, J., delivered the opinion of the Court, in which EFFRON, J., and COX, S.J., joined. SULLIVAN, J., filed an opinion concurring in part and dissenting in part. CRAWFORD, C.J., filed a dissenting opinion.

For Appellant: *Lieutenant Michael A. Castelli*, JAGC, USN (argued); *Lieutenant Commander Linda J. Lofton*, JAGC, USN (on brief).

For Appellee: *Lieutenant James E. Grimes*, JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Commander Eugene E. Irvin*, JAGC, USN (on brief).

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of attempted sodomy, violating a general order (2 specifications), rape, sodomy, indecent assault (2 specifications), and adultery, in violation of Articles 80, 92, 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 892, 920, 925, and 934, respectively. The approved sentence provides for a dishonor-

able discharge, confinement for 5 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 50 MJ 874 (1999).

Our Court granted review to determine whether the evidence of rape was legally sufficient.[1] For the reasons set out below, we reverse in part and remand.

### Factual Background

Appellant, a Marine Corps recruiter, persuaded NF, a high school student, to enlist in the Marine Corps. After NF successfully completed the qualification testing required for enlistment, appellant told him that he had done well and that the two should meet to discuss the test later that day. NF and his then girlfriend, 17–year–old EH, both went to appellant's office. Appellant drove the couple back to NF"s house so that his parents could sign parental consent forms allowing NF to join the Marine Corps.

After 30 to 45 minutes at NF"s house, appellant drove EH and NF back to the recruiting office. NF thought they were returning to fill out more paper work. EH thought they were all going out for dinner.

At the recruiting office, appellant produced a bottle of liquor and suggested that the three of them have a drink to celebrate NF"s enlistment and high test score. Appellant continued to "toast" NF and persuaded NF and EH to take several more drinks, until both were intoxicated. Appellant then told EH that she should kiss NF to celebrate. She gave NF a "tap kiss," but appellant encouraged her to "give him a real kiss." They kissed each other more passionately. Appellant then encouraged them to "[g]o ahead, just get into it."

Appellant told NF and EH to take off their shirts, and they complied. They continued to kiss. At appellant's request, NF removed her bra. Then appellant asked them to take off their pants and they did. Appellant moved closer to the couple and touched EH's breasts and vaginal area.

NF testified that he and EH lay down on the floor, and that he performed oral sex upon EH. NF testified that EH then pulled him up beside her because appellant had tried to place his penis in her mouth. Appellant moved around NF and knelt between EH's legs. NF testified that EH gasped and said, "Stop him, he's inside of me." NF told EH not to worry and that it would be over soon. In order to dissuade appellant, NF then pushed appellant away, placed himself between EH's legs and feigned intercourse with her. Appellant then masturbated and ejaculated on EH's breasts and partly on NF"s back. EH became hysterical, got up, and went to the bathroom. Appellant dressed, gave NF $20 for taxi fare, and left the office.

EH testified that after she and NF lay down, appellant performed oral sex on her. She testified that NF was lying beside her, and she could see appellant. She testified that appellant performed oral sex for a while, and then he propped himself over EH and penetrated her with his penis. EH testified that she whispered to NF, "He's inside of me." According to EH, appellant then withdrew from her, asked NF if he ever had performed oral sex on her, and told NF that he should do so. NF then performed oral sex on EH. Appellant then straddled EH's chest and attempted to stick his penis in her mouth. EH testified that she pushed appellant away because she did not want that to happen.

EH testified that she was drunk and afraid, but that she did not tell appellant he could have intercourse with her. On cross-examination, she testified that she did not tell appellant "no" when he penetrated her.

Appellant testified in his defense and denied that the incident happened.

1. The granted issue is:

   WHETHER THE EVIDENCE PRESENTED BY THE GOVERNMENT WAS LEGALLY INSUFFICIENT TO ESTABLISH THAT APPEL-LANT WAS GUILTY OF RAPING ERICA HIDALGO BECAUSE THE GOVERNMENT FAILED TO ESTABLISH A REQUIRED ELEMENT OF RAPE.

### Discussion

Appellant asserts that the evidence is legally insufficient because the Government failed to produce evidence that the intercourse was without EH's consent. In a supplemental pleading filed in response to questions from the bench at oral argument, appellant suggests the possibility that this Court affirm a lesser-included offense of indecent acts by engaging in sexual intercourse with EH in the presence of her boyfriend. Appellant invites this Court to consider his case in light of *United States v. Izquierdo*, 51 MJ 421 (1999).

The Government argues that EH was unaware that appellant was about to rape her and therefore had no reason to manifest her lack of consent. *See United States v. Traylor*, 40 MJ 248, 249 (CMA 1994) (rape complete upon penetration; failure to resist immaterial where victim was unaware that penetration by accused was going to occur).

■ Legal sufficiency is a question of law that we review de novo. 2 Steven A. Childress & Martha S. Davis, *Federal Standards of Review* § 9.01 at 9–2 (3d ed.1999). The legal test is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements [of the offense of rape] beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 MJ 324 (CMA 1987).

Article 120 defines rape as "sexual intercourse, by force and without consent." Paragraph 45c(1)(b), Part IV, Manual for Courts–Martial, United States (1995 ed.),[2] reads as follows:

> If a victim in possession of his or her mental faculties fails to make lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that the victim did consent. Consent, however, may not be inferred if resistance would have been futile, where resistance is overcome by threats of death or great bodily harm, or where the victim is unable to resist because of the lack of mental or physical faculties.

*See also United States v. Bonano–Torres*, 31 MJ 175, 179 (CMA 1990) ("[W]here there is no constructive force and the alleged victim is fully capable of resisting or manifesting her non-consent, more than the incidental force involved in penetration is required for conviction.").

■ The Court of Criminal Appeals considered the evidence of EH's intoxication, took note of her ability to remember appellant's conduct "with ringing clarity," and concluded that EH was capable of resisting or manifesting her non-consent. *See* 50 MJ at 876 (noting EH's ability to remember the events, confide in a friend, and eventually contact the police, "notwithstanding [her] intoxication"). The court also found the room was dark, and EH was underneath NF, making EH "unaware of any attempt to penetrate her until it had already occurred." *Id.* We will not overturn findings of fact by a Court of Criminal Appeals unless they are clearly erroneous or unsupported by the record. *United States v. Avery*, 40 MJ 325, 328 (CMA 1994).

■ The conclusion that EH was capable of manifesting her lack of consent is amply supported by the record. In addition to the "ringing clarity" of her memory, she manifested her ability to demonstrate lack of consent by pushing appellant away when he attempted to place his penis in her mouth.

However, the finding that EH was unaware of any attempt to penetrate her until penetration had already occurred is unsupported by the record. Although the room may have been darkened, there was sufficient light for EH and NF to see what was happening and to describe it in detail. EH testified that NF was lying beside her, not on top of her. She also testified that she could see appellant while he was performing oral sex on her and when he moved himself into position to penetrate her. There is no evidence to the contrary.

2. This provision is unchanged in the current version of the Manual.

The evidence of record allows only one reasonable conclusion: that EH saw what appellant was doing and about to do, and that she did nothing to express her lack of consent to sexual intercourse. She whispered to NF, but said nothing to appellant. Accordingly, we find *United States v. Traylor, supra,* inapposite.

Applying the legal principles above to the facts, we hold that the evidence of rape is legally insufficient. Although EH was intoxicated, she was able to recall the events with "ringing clarity." She was able to manifest lack of consent and did so when appellant attempted to place his penis in her mouth. She undressed herself in front of appellant, allowed him to touch her breasts and vaginal area, allowed him to perform oral sex on her, and said nothing when she saw him move into position for sexual intercourse. She whispered to NF, but said nothing to appellant and did nothing to suggest to appellant that she did not consent to sexual intercourse. Even if she did not actually consent, there was no way for appellant to know that she did not consent. *See* RCM 916(j), Manual, *supra* (ignorance or mistake of fact); *United States v. Watt,* 50 MJ 102, 105 (1999) (honest and reasonable mistake of fact as to consent is defense to rape).

■ However, our holding regarding the insufficiency of the evidence of rape does not end the analysis. The evidence overwhelmingly establishes that appellant had sexual intercourse with EH in the presence of her boyfriend, NF. Sexual intercourse under those circumstances is an indecent act, a lesser-included offense of rape. *See Izquierdo,* 51 MJ at 422–23, quoting *United States v. Berry,* 6 USCMA 609, 614, 20 CMR 325, 330 (1956) (Sexual intercourse is "open and notorious," "flagrant," and "discrediting" when participants know a third person is present.).

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals with respect to the findings of guilty of Charge I and its specification (attempted sodomy), Charge II and its specifications (violations of a general order), Charge IV and its specification (sodomy), and Charge V and its specifications (indecent assault and adultery) is affirmed. Only so much of the decision with respect to Charge III and its specification (rape) is affirmed as finds the evidence legally and factually sufficient to support a finding of guilty of the lesser-included offense of indecent acts, in violation of Article 134. The sentence is set aside. A rehearing on sentence is authorized.

SULLIVAN, Judge (concurring in part and dissenting in part):

I agree with the majority that *United States v. Traylor,* 40 MJ 248 (CMA 1994) (holding that victim was unaware of penetration and, thus, could not consent), is not applicable in this case.* Nevertheless, in light of the lower court's erroneous reliance on *United States v. Traylor, supra,* in its legal sufficiency analysis, I think the better course of action for this Court would be to remand this case to the Court of Criminal Appeals to address the legal and factual sufficiency of the evidence in this case as to whether the victim did not consent to the intercourse. *See generally United States v. Webster,* 40 MJ 384, 386 (CMA 1994) (holding that proof of lack of consent does not require some positive action or response by victim). I am reluctant to overturn the jury's finding of rape in this case without a proper legal and factual sufficiency analysis by the court below—a court with special factfinding powers. *See* Article 66(c), Uniform Code of Military Justice, 10 USC § 866(c).

CRAWFORD, Chief Judge (dissenting):

The findings of fact of the Court of Criminal Appeals concerning the evidence of EH's intoxication are clearly erroneous and unsupported by the record. Because there is ample evidence of record upon which the trier of

---

* I disagree with my dissenting colleague that the only reasonable conclusion to be drawn from the evidence was that the victim was intoxicated and, thus, could not consent. *Cf. United States v.*

*Booker,* 25 MJ 114, 117 (CMA 1987) (holding that evidence supported members' conclusion that victim was too drunk to consent).

fact could conclude that EH was intoxicated and, therefore, unable to give consent, I would not reach the question whether EH was aware or unaware of penetration.

The factual question of the level of EH's intoxication was presented to the members at various points during the trial: trial counsel's argument, cross-examination, and the military judge's instructions.

The evidence introduced at trial revealed that appellant purchased a bottle of Dewars whiskey just before and in anticipation of sexual activities, and gave 17–year–old EH and her 16–year–old boyfriend water cooler cups full of whiskey to drink, before any of the acts occurred. EH testified that she was feeling the effects of the alcohol, and her boyfriend testified that she was acting silly. In fact, EH said she was so drunk she could not see herself when she looked in her hand-held mirror. The military judge instructed the members that:

> When a victim is incapable of consenting because she is intoxicated to the extent that she lacks the mental capacity to consent, no greater force is required than that necessary to achieve penetration.

Additionally he instructed that:

> In deciding whether [EH] had consented to the sexual intercourse you should consider all the evidence in this case, including, but not limited to [EH's] age, her experience with alcohol, the degree of Miss [H's] intoxication, if any, her mental alertness, the ability of Miss [H] to walk, to communicate coherently, and other circumstances surrounding the sexual intercourse.

If Miss [H] was incapable of giving consent, and if the accused knew or had reasonable cause to know that Miss [H] was incapable of giving consent because she was intoxicated, the act of sexual intercourse was done by force and without consent.

Based upon all of the evidence, the members found appellant guilty of rape.

It is clear that appellant gave intoxicating liquor to 17–year–old EH and her 16–year–old boyfriend with the intent of dulling their senses so that he could engage in various sexual acts with EH, including entering her sexually without her opposition.

Since appellant, as the provider of alcohol to these minors, had good reason to believe EH was too intoxicated to consent to sexual intercourse with him, and since the testimony of EH and her boyfriend evidenced that she was in fact intoxicated, I would hold that the evidence is legally sufficient to sustain appellant's conviction for rape.

I cannot support the notion that the ability of EH and her boyfriend to recall the events of the night in question in "ringing clarity" has any special relevance to the question of EH's intoxication. This is particularly the case where, as here, no evidence was presented at trial concerning the effect of intoxication on memory and no evidence was presented which contradicted the clear evidence of EH's intoxication.

I think it will be a sad day for all victims of sexual crimes if their ability to recall the criminal acts perpetrated upon them is used against them in this fashion.